March 2, 1999

       No. 1-97-2248WC

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

 FIRST DISTRICT

INDUSTRIAL COMMISSION DIVISION

WALDORF CORPORATION a/k/a ) Appeal from the Circuit

WABASH CORPORATION, ) Court of Cook County,

Appellant, ) Illinois

)

v. ) No. 96 L 50166

) 

THE INDUSTRIAL COMMISSION, ) Honorable

et al., 
(Janet Johnson,   ) John A. Ward

Appellee.) ) Judge, Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE delivered the opinion of the court
:

_________________________________________________________________

In this matter, we are asked to determine whether a condition termed "fibromyalgia" can be considered a compensable injury under the Workers' Compensation Act (the Act) (
now 
820 ILCS 305/1 
et seq.(Michie 
1995)).  We hold that fibromyalgia can be compensable under the Act where it is proven to be a disabling condition arising out of and in the course of the claimant's employment.  We affirm the judgment of the circuit court of Cook County.

Janet Johnson (the claimant), filed an application for adjustment of claim pursuant to the Act 
alleging 
that she sustained a condition known as fibromyalgia as the result of an accident she sustained on May 2, 1990, while working as a "catcher" for Waldorf Corporation, a/k/a Wabash Corporation (the employer).  Following hearing, the arbitrator found that claimant had suffered an accidental injury traceable to May 2, 1990, and that a causal connection between claimant's accident and her current condition of ill-being, fibromyalgia.  The arbitrator 

awarded TTD, medical payments, and found that claimant was entitled to permanent total disability benefits.  The employer petitioned for review with the Illinois Industrial Commission (Commission), which affirmed and adopted the arbitrator's findings and conclusions.  The Employer then filed a petition for review by the circuit court of Cook County, which found that the decision of the Commission was neither against the manifest weight of the evidence, nor contrary to law and confirmed the decision of the Commission.  The employer appealed to this court.  For the following reasons, we affirm the judgment of the circuit court.  
 

The claimant had worked for the employer for several years, but her problems began shortly after she began working on a job called "Hallmark."  In that job she was required her to remove unfolded cartons as they came off a cutting press, stack the cartons, and then lift and place groups of stacked cartons in a large container above her head.  Every 30 to 45 seconds the claimant stacked hundreds of cartons, lifted them, stretched to reach over her head, stooped down and repeated the movements.  The Commission termed the work "fast, heavy and repetitious."  

After several weeks of performing these duties, the claimant noted soreness in her knees, right shoulder and spine.  She went to her family doctor who prescribed medication.  She continued to work and her condition deteriorated.  She developed soreness in her cervical spine and right shoulder.  She reported her symptoms to her supervisor.  On May 2, 1990, while working, the claimant's pains became worse.  She informed her supervisor that she could no longer keep up with the pace set by the machine.  She informed the company nurse that she intended to seek treatment the next day.

Medical records from Bridgeview Medical Center indicate that the claimant sought treatment on May 3, 1990, and was diagnosed with "right shoulder biceps tendinitis" caused by physical activity associated with work.  The claimant was placed on a 10 pound weight restriction with no repetitive movements.  The following day, the claimant was examined by the employer's physician, Dr. Phyllis Gerber, who diagnosed "cervical shoulder sprain" and also placed the claimant on a 10 pound weight restriction with no repetitive motions.

Dr. Gerber referred the claimant to Dr. Dirk Nelson, an orthopedic surgeon, who examined her on June 7, 1990.  Dr. Nelson reported his observations of decreased flexion and extension and lateral bending."  He opined that claimant suffered from "cervical sprain syndrome," and recommended continued physical therapy and work restrictions.    

The claimant remained off work until she returned to light-

duty on July 30, 1990, and worked until October 26, 1990, when due to her deteriorating condition, she was unable to continue performing the light-duty.  On October 30, 1990, Dr. Gerber diagnosed "chronic fatigue syndrome and fibromyalgia."  

The claimant then sought treatment from Dr. Robert Katz, a certified rheumatologist.  Dr. Katz diagnosed claimant's condition as "fibromyalgia" and opined that her condition was initiated by injury at work and also aggravated by her work duties.  He based his opinion on his evaluation of the claimant's condition and complaints while attempting to work at light-duty without success and on the fact that she was able to perform her duties for several years without complaint prior to being assigned to the repetitive duties of the "Hallmark" job.  Dr. Katz testified in his deposition at length as to the possible causes and effects of fibromyalgia and its relationship to occupational injuries and repetitive trauma.  Dr. Katz noted that the medical community does not yet know what causes fibromyalgia.  However, he noted his own experience with approximately 500 to 1,000 patients with fibromyalgia, and stated that in approximately 25% of those patients the condition (fibromyalgia) began after an injury at work.  Dr. Katz then opined that the claimant's fibromyalgia was the result of a work-related injury, based upon the timing of the onset of symptoms shortly after beginning to work on the "Hallmark" machine.  

Dr. Herbert Rubenstein examined the claimant on January 19, 1993, at the request of the employer.  He reported an observation of "mild right trapezius spasm and local tenderness in the posterior neck with trigger points at the right scapula, both trapeze muscles and the right acromion."  Dr. Rubenstein concluded that the claimant "does indeed have fibromyalgia and osteoarthritis of the neck."  In his deposition, Dr. Rubenstein commented that fibromyalgia is an ill-defined clinical syndrome involving individuals who had various sites of skeletal and muscular pain, but for whom no objective basis for such pains could be found.  Dr. Rubenstein noted that there is no recognized cause of fibromyalgia, but the predominant theory as to its cause is that it has a psychological basis.  Dr. Rubenstein stated his personal belief that fibromyalgia is a psychological disorder, and then opined that based upon his opinion as to the causes of the condition, the claimant's fibromyalgia could have been neither caused nor aggravated by her employment.  

On March 9, 1993, the claimant was examined by Dr. Daniel Hirsen, a certified rheumatologist, who diagnosed claimant's condition as fibromyalgia, and opined that "there certainly is a probability that repetitive physical work can exacerbate the symptoms of this syndrome [fibromyalgia]."  

Based upon the record of the repetitive nature of the claimant's job duties, and the onset of her symptoms shortly after undertaking the "Hallmark" job, the Commission found that the claimant had sustained accidental injuries on May 2, 1990, which were caused by her repetitive work duties arising out of and in the course of her employment.  The Commission further found, based upon the testimony of Dr. Katz and Dr. Hirsen, that the claimant's present condition of ill-being (fibromyalgia) was causally related to the repetitive work duties performed by the claimant from January 1990, to May 2, 1990.  

In awarding permanent total disability benefits, the Commission found that the claimant had proven entitlement to permanent total disability (PTD) benefits under the "odd-lot" doctrine.  The employer sought review from the circuit court of Cook County, which confirmed the decision of the Commission.  This appeal followed.           

The employer first maintains that fibromyalgia is not compensable as a matter of law, as it is a condition manifested solely by subjective complaints of the patient.  The employer cites 
Nunn v. Industrial Comm'n, 
157 Ill. App. 3d 470, 477 (1987) for the proposition that a claimant "must produce competent evidence of objective conditions or symptoms to support [a] claim."  
Nunn 
cites as support for that proposition 
Frontier Ford, Inc. v. Industrial Comm'n, 
55 Ill. 2
d 
556 (1973).  In 
Frontier Ford, 
the supreme court reversed the circuit court's judgment affirming the Commission's award of TTD benefits to a claimant with only subjective evidence of injury.  The court based its decision on section 8(b)(7) of the Act in effect at the time, which provided that TTD compensation could only be made for "such accidental injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.  Ill. Rev. Stat. 1971, ch 48, par. 138.8(b)(7)."  
Frontier Ford, 
55 Ill. 2d at 560.  

The current version of Section 8(b)(7) no longer contains the requirement that a claimant's injuries must be objectively manifest.  Therefore, as that specific statutory requirement has been removed by the legislature, it is clear that a claimant 
can 
be compensated under the Act for injuries manifested in a purely subjective manner, provided the claimant has otherwise proven that his or her current condition of ill-being arose out of and in the course of his or her employment.   

The employer next maintains that the Commission's determination finding a causal connection between the claimant's condition of ill-being and her employment was against the manifest weight of the evidence.  The employer's argument is centered upon the premise that because the cause of fibromyalgia is unknown, then it was against the manifest weight of the evidence for the Commission to attribute the claimant's condition to her work.  We disagree.  The manifest weight of the evidence is "that which is the clearly evident, plain and indisputable weight of the evidence, and for a finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent."  
Illinois Bell Telephone Co. v. Industrial Comm'n, 
265 Ill. App. 3d 681, 686 (1994).  After carefully reviewing the record, we cannot say that the determination of the Commission that a causal connection between the claimant's work and her condition of ill-being, diagnosed as fibromyalgia, was against the manifest weight of the evidence.

Here, the record established that the claimant had been employed for several years as a catcher, but her symptoms of ill-

being only started after she began working on the Hallmark job.  The record also established that, unlike her previous job duties, the duties on the Hallmark job were "fast, heavy and repetitious."  The fact that the claimant's state of health so dramatically changed during the Hallmark job supports the Commission's determination that the claimant's condition of ill-

being was causally related to her work.    

Proof of prior good health and change immediately following and continuing after an injury may establish that an impaired condition was due to the injury.   
Spector Freight Systems, Inc. v. Industrial Comm'n, 
93 Ill. 2d 507  (1983).  See also, 
Darling v. Industrial Comm'n, 
176 Ill. 186, 193 (1986)("A causal connection between work duties and a condition may be established by a chain of events including petitioner's ability to perform duties before the date of the accident and inability to perform the same duties following that date.").  Here, the claimant went from a state which allowed her to work before May 2, 1990, to a state of disability after that date.  Considered in light of the high physical demands of the Hallmark job, the finding of the Commission as to causation cannot be said to be against the manifest weight of the evidence.

In addition, we find there was sufficient medical evidence in the record to support a finding of causation.  We note that the Commission relied upon the testimony of Dr. Katz, one of the claimant's treating physicians, who opined that the claimant's employment could have caused or aggravated her fibromyalgia.  Likewise, Dr. Hirsen also opined that a causal connection probably existed between the claimant's fibromyalgia and her employment.  In finding that the testimony of these medical experts supported the Commission's finding of causation, we reject the employer's contention that lack of scientific certainty as to the cause of fibromyalgia renders these opinions as inadmissible speculation and conjecture.  We note our supreme court's approving quotation of Professor Larson's treatise;

"A finding that a disease is work-connected will not be reversed as being based on speculation and conjecture merely because the medical profession does not fully understand the etiology of the disease.  3 A. Larson, Workmen's Compensation, sec. 80.31 (c)(1983)."  
Certi-Serve v. Industrial Comm'n, 
101 Ill. 2d 236, 245 (1984). 

Here, while the etiology of fibromyalgia is unknown, that fact does not compel the conclusion that the claimant was incapable of proving a causal connection.  Rather the evidence in the record relating to the specific nature of the claimant's job duties, the change in claimant's state of health after beginning the Hallmark job, and the medical evidence all support the Commission's finding of causal connection.  

The employer next maintains that the Commission erred in finding that the claimant sustained an accidental injury on May 2, 1990.  We disagree.  The test of when an injury manifests itself is an objective one determined from the facts and circumstances of each case, and the Commission's finding as to when an accident injury manifest will not be disturbed on appeal unless against the manifest weight of the evidence.  
Three "D" Discount Store v. Industrial Comm'n, 
198 Ill. App. 3d 43, 47 (1989).    

Here, it cannot be said that the Commission's finding that the claimant's accidental injury manifested on May 2, 1990, was against the manifest weight of the evidence.  The record shows that the claimant complained of pain in her shoulder and neck while working on that day.  These were areas where she had not previously noted pain.  She sought medical attention the next day and was diagnosed as suffering from tendinitis.  The employer's own physician order the claimant off work the next day due to a diagnosis of shoulder sprain and she remained off work for approximately two months.  Based upon the record, it cannot be said that the Commission's finding that an accidental injury occurred on May 2, 1990, was against the manifest weight of the evidence.  

Lastly, the employer maintains that the Commission erred in finding that the claimant was permanently and totally disabled.  Again, we disagree.  Determinations as to the extent or permanency of a claimant's disability is a question of fact for the Commission, which will not be disturbed unless it is against the manifest weight of the evidence.  
E.R. Moore Co. v. Industrial Comm'n, 
71 Ill. 2d 353, 361 (1978).

A claimant is permanently and totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists.  
Caradco Window & Door v. Industrial Comm'n, 
86 Ill. 2d 92 (1981).  If, as in this matter, a claimant's disability is limited in nature so that he is not obviously unemployable or there is no medical evidence to support a claim to total disability, claimant bears the burden to establish the unavailability of employment to a person in his circumstances.  
A.M.T.C. of Illinois, Inc. v. Industrial Comm'n, 
77 Ill. 2d 482, 490 (1979).

If a claimant shows that he falls into the "odd-lot" category, that is, one who though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market, then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to him.  
Valley Mould & Iron, Co. v. Industrial Comm'n, 
84 Ill. 2d 538, 546-47 (1981).  A claimant who has conducted a reasonable and proper job search satisfies his or her burden of proof and shifts the burden to the employer to prove that the claimant is employable in a stable labor market and that such a market exists.  
Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n, 
180 Ill. App. 3d 885 (1989). In this matter, the record indicated that the claimant conducted a search for jobs within her work restrictions during which she contacted a total of 106 prospective employers.  The record also indicated that the claimant continued her job search at least up to the time of the hearing before the arbitrator.  As the Commission had no evidence that a stable labor market existed for the claimant, the Commission determined that she had proven her entitlement to permanent total disability under the odd-lot doctrine.  Based upon the record, we cannot say that the Commission's finding was against the manifest weight of the evidence.       

Based upon the foregoing, the decision of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and RARICK, JJ., concurred.