# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 88

APRIL TERM, A.D. 2015

June 19, 2015

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

JAIME GUERRERO,

Appellant
(Petitioner),

v.                                                          S-14-0271

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Campbell County*
The Honorable Thomas W. Rumpke, Judge

*Representing Appellant:*
Matthew R. Sorenson of Daly, Davidson & Sorenson, LLC, Gillette, Wyoming.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kristin M. Nuss, Senior Assistant Attorney General.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers  are  requested  to  notify  the  Clerk  of  the  Supreme  Court,  Supreme  Court  Building, Cheyenne,  Wyoming  82002,  of  typographical  or  other  formal  errors  so  correction  may  be  made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]    The Office of Administrative Hearings (OAH) denied Jaime Guerrero's worker's compensation claim on the grounds he failed to prove a causal relationship between his lower back problems and a work-related accident on June 8, 2011.  The district court upheld the OAH decision.

[¶2]    We affirm.

## ISSUES

[¶3]    The issues for review in this case are:

1.       Whether the OAH decision that Mr. Guerrero did not meet his burden of establishing the causal relationship between his back problems and his work-related accident is supported by substantial evidence.

2.       Whether the OAH properly applied the second compensable injury rule.

## FACTS

[¶4]    On June 8, 2011, Mr. Guerrero, who was a welder for Ironarc Welding, LLC, suffered a work-related injury.  He welded a drain-off valve on a pipe at an oil well pumping station and was watching while the system was restarted, when a thirteen pound blow-out valve broke loose from the pipe and hit him on the lower left side of the front of his body.  Mr. Guerrero went to the emergency room where he was treated for "blunt abdominal trauma with a contusion, hematoma and abrasions to the left suprapubic region."  He underwent surgery a few days later to drain the hemotoma.

[¶5]    The Department of Workforce Services, Workers' Compensation Division (the Division) approved benefits for the injury to Mr. Guerrero's left groin, abdomen, upper leg, and knee.  He was unable to work for approximately three months and received temporary total disability benefits during that time.  While he was convalescing, he took prescription pain medication.  Because of continued numbness and pain in his leg, his treating physician, Sara Hartsaw, M.D., referred him to a neurologist for further evaluation.  He saw neurologist Robert Finley, M.D., on September 8, 2011, who diagnosed him as suffering from "weakness involving the left lower extremity and sensory alteration noted in what appears to be likely the distribution of the left lateral femoral cutaneous nerve consistent with 'meralgia paresthetica.'" [1]  Mr. Guerrero did not

---

[1] "Meralgia paresthetica occurs when the lateral femoral cutaneous nerve — which supplies sensation to the surface of [the] outer thigh — becomes compressed, or 'pinched.' The lateral femoral cutaneous nerve is purely a sensory nerve and doesn't affect [the] ability to use [the] leg muscles." http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/causes/con-20030852

1

complain to Dr. Finley of back pain at that time, and his notes indicate that Mr. Guerrero told him he did not have any significant back pain while in the hospital after the accident.

[¶6] Mr. Guerrero participated in a work hardening program with a physical therapist to ready him to return to work. He testified that he had some pain in his lower back while at therapy but he thought it was from "sitting around those three months and not really being interactive with anybody." Dr. Hartsaw released Mr. Guerrero to return to work without restrictions starting September 19, 2011, and he went back to work as a welder.

[¶7] On October 18, 2011, Mr. Guerrero saw Dr. Hartsaw for continued problems with his left leg and, this time, he also complained of back pain. She referred him to neurologist and pain management specialist Romer Mosquera, M.D., who addressed Mr. Guerrero's back pain even though the written referral was only for the problems with his leg. Mr. Guerrero saw Dr. Finley and Dr. Mosquera on November 23, 2011, and complained to both about his back pain.

[¶8] Dr. Mosquera ordered an MRI of Mr. Guerrero's lumbar spine. The MRI revealed:

> Lumbar degenerative change at L3-L4 through L5-S1,
> with findings suggesting disc tear at each of those levels,
> some central narrowing at L4-L5, and disc protrusion to
> the right at L5-S1 compromising the right S1 root.

The medical records from Mr. Guerrero's December 20, 2011, appointment with Dr. Mosquera indicate that Mr. Guerrero stated his back pain had started acutely "several months ago;" was severe and radiated down both of his thighs; and was aggravated by lifting, exercising, carrying heavy objects, and driving, sitting or standing for long periods. The doctor discussed Mr. Guerrero's MRI results with him and recommended a lumbar epidural steroid injection. Mr. Guerrero had the epidural injection on January 5, 2012, and it relieved a great deal of his pain. He did not, however, return to Dr. Mosquera for a follow-up appointment.

[¶9] The Division denied Mr. Guerrero's claim for worker's compensation benefits for the evaluation and treatment of his back pain, finding "[t]his case is not open for the lumbar spine" and noting he was referred to Dr. Mosquera "for left lower extremity pain only, not low back pain." More specifically, the Division determined that the lumbar

spine evaluation and treatment were not related to his original work injury. Mr. Guerrero objected, and the Division referred the matter to the OAH.[2]

[¶10] The OAH held a contested case hearing on March 4, 2013. Transcripts of the depositions of Dr. Hartsaw and Dr. Mosquera were admitted into evidence, as were the relevant medical records. Mr. Guerrero was the only witness who testified at the contested case hearing. The OAH ruled that Mr. Guerrero did not satisfy his burden of proving his back pain was caused by the work accident and denied his request for worker's compensation benefits. Mr. Guerrero petitioned the district court for review, and that court affirmed the OAH decision. Mr. Guerrero then appealed to this Court.

## STANDARD OF REVIEW

[¶11] When an appeal is taken from a district court's review of an administrative agency's decision, we examine the case as if it had come directly from the agency without giving any deference to the district court's decision. *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

---

[2] The OAH ruled that it did not have jurisdiction over some of the final determinations because Mr. Guerrero did not object within the deadline set out in Wyo. Stat. Ann. § 27-14-601(k) (LexisNexis 2010). Mr. Guerrero does not challenge that ruling on appeal.

3

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶12] Under § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale,* ¶ 22, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). *See also Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Id.,* ¶ 11, 247 P.3d at 849 (citation omitted).

[¶13] When an agency rules that the claimant did not satisfy his burden of proof, we apply the following standard:

If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale,* ¶ 22, 188 P.3d at 561 (citations omitted).

[¶14] "We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law." *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp Div.,* 2011 WY 118, ¶ 13, 259 P.3d 1161, 1164 (Wyo. 2011)*,* quoting *Kenyon,* ¶ 13, 247 P.3d at 849, which quoted *Moss v. State ex rel. Wyo. Workers' Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010).

4

## DISCUSSION

### 1. Direct Causation

[¶15] "A worker's compensation claimant has the burden of proving all of the essential elements of his claim by a preponderance of the evidence." *State ex. rel. Wyo. Workers' Safety & Comp. Div. v. Slaymaker,* 2007 WY 65, ¶ 13, 156 P.3d 977, 981 (Wyo. 2007); *Sanchez v. State ex. rel. Wyo. Workers' Safety & Comp. Div.,* 2006 WY 64, ¶ 7, 134 P.3d 1255, 1257 (Wyo. 2006). In order to qualify for worker's compensation benefits, an employee must demonstrate he suffered a compensable injury, as defined in Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2013):

> (xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Under the statutory definition of injury, the claimant has the burden of "establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment." *Hanks v. City of Casper,* 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo. 2001). *See also State ex rel. Wyo. Workers' Comp. Div. v. Espinoza,* 924 P.2d 979, 981 (Wyo. 1996). The claimant must show the causal connection to a reasonable degree of medical probability. Typically this requires expert medical testimony that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury. *Stevens v. State ex rel. Dept. of Workforce Servs., Workers' Safety & Comp. Div.,* 2014 WY 153, ¶ 50, n.6, 338 P.3d 921, 932, n.6 (Wyo. 2014).

[¶16] The OAH found:

> Guerrero did not prove his October-November 2011 lumbar spine conditions and symptoms were causally connected to his June 8, 2011 work-related accident and injury. The evidence was confusing and inconsistent regarding the timing and development of Guerrero's low back pain and symptoms. The evidence did not demonstrate which of Guerrero's lumbar spine conditions was generating his symptoms. Dr. Mosquera's opinion testimony was not strongly stated and

5

was based upon the unproven assumption that Guerrero's low back pain arose acutely five months before November 2011.

[¶17] Mr. Guerrero challenges the OAH conclusion that Dr. Mosquera's testimony was insufficient to prove his back problem was caused by his work injury. Dr. Mosquera was deposed and the deposition transcript was admitted into evidence at the contested case hearing. Dr. Mosquera stated Mr. Guerrero's MRI showed degenerative changes and disc tears. Dr. Mosquera testified about the general causes of disc tears:

> Q. What causes [a disc tear]?
>
> A. Usually you can see that from degeneration, okay, in elderly people. You can see that from external pressure, like if somebody has a bad habit of lifting heavy weights without the proper alignment of [the] spine, not following the recommendations for hygiene,[3] then they're at higher risk of having these type of conditions.
> People overweight may have them even spontaneously, because they're carrying a higher amount of pressure, discs carry a higher amount of pressure.
> High velocity injuries like a motor vehicle accident or motorcycle accident just from the shear pressure, shear injury; you could have a tear on the disc that could produce outpouching of disc material.
> You could – there's some – most of the cases, especially across the U.S., are caused by occupational, you know. It has to do with using improperly devices to lift weights or lifting too much weight that the spine is not prepared to handle, you know, if you don't use your spine properly.

(footnote added).

[¶18] Dr. Mosquera was then asked about whether Mr. Guerrero's particular work accident could have caused disc tears:

> Q. With Mr. Guerrero, when he had the -- I guess the blunt force trauma on the front half of his body, could that have caused a disc tear?

---

[3] Hygiene is defined as "the conditions or practices that serve to promote or preserve health." The American Heritage Stedman's Medical Dictionary (2002).

A.      You know, it's difficult because I got an initial --- what he told me initially was that he had that very strong pressure coming in and produced significant compression, contusion in that area.

Then we were trying to get more details about the injury, and he did mention on the second occasion when I saw him that the strength of that pressure actually blew him out I think several feet, okay, and he landed on his back.

I would say it's certainly possible, but could we have certainty?[4]  You know, those lesions could have been there from before and just been aggravated after the injury. . . .

Q.      Was Mr. Guerrero asymptomatic prior to his hemotoma injury on the front half of his body, at least that's what he reported to you?

A.      Yeah, I think he mentioned that he didn't ever have any back problems before.  So he was suspicious of all this coming after his injury.

But, obviously I didn't do my – I didn't do the initial evaluation when he actually had the injury. . . . [W]hen time elapses there is always this possibility of confusing timeframes for symptoms.  You know, I would say it is possible, but do I have certainty that that was the case? Not really.

Q.      I mean, do you ever have certainty in those situations other than what the patient reports to you, I suppose?

A.      It's difficult, yeah.  It's difficult.  Unless you have somebody that, you know, is 18 years old that, you know, never had any injury, and then all of a sudden [has] a[n] injury, and you see something that you shouldn't really be seeing in someone that young, then you definitely associate it to that injury.

But you know, I would say you have to go with what the patient tells you and believe that.

---

[4] Medical certainty is not required to establish causation in a worker's compensation case.  As we stated above, the standard of proof on causation is "medical probability."  *Stevens*, ¶ 50, n.6, 338 P.3d at 932, n.6.

> Q.      So in the situation with Mr. Guerrero, if he was
> – with the force that had hit him and pushed him back several
> feet, causing him to fall on his back, that could have caused a
> disc tear?
>
> A.      Yeah, I think there's a possibility of that.

(footnote added).

[¶19]  Dr. Mosquera was only able to state that it was "possible" Mr. Guerrero's back problems were related to the June 2011 work accident.  "[O]pinions expressed by medical experts in terms of 'can,' 'could,' or 'possibly' are not sufficient to meet an employee's burden of proof."  *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 9, ¶ 22, 105 P.3d 451, 458 (Wyo. 2005), citing *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.,* 913 P.2d 863 (Wyo. 1996).  Medical testimony stating the claimant's work "contributed to" the injury or the injury was "most likely" or "probably" the product of the workplace is sufficient to satisfy the requirement.  *Boyce,* ¶ 21, 105 P.3d at 458, citing *Jim's Water Service v. Eayrs,* 590 P.2d 1346, 1349 (Wyo. 1979) and *Claim of Vondra,* 448 P.2d 313 (Wyo. 1968).  *See also Salas v. General Chemical,* 2003 WY 79, ¶ 10, 71 P.3d 708, 711-12 (Wyo. 2003).  Dr. Mosquera's testimony that it was "possible" or "a possibility" that Mr. Guerrero's disc tears were caused by the work accident does not satisfy the requirement for medical proof of causation.

[¶20]  Mr. Guerrero also maintains that the requisite causal connection between the disc tears and his work accident was established by Dr. Mosquera's testimony that in a person without prior back symptoms "the most logical thing is to think that the injury caused those structural changes."  We have never considered this precise language to determine whether it is sufficient to meet the "medical probability" standard required for workers' compensation claims, and we do not need to in this instance because the context of Dr. Mosquera's statement clearly shows that he was not stating it was more probable than not that Mr. Guerrero's back was injured during the work-related accident.  The doctor testified:

> Q.      With a disc tear, with Mr. Guerrero's situation,
> would the pain of a tear of the disc, would that be acute
> immediately upon the injury or could that develop as he came
> back to work later on?
>
> A.      You have the two possibilities.  A disc tear
> doesn't tell you that the tear occurred the day you had, you
> know, symptoms.  It just tells you about the status of a series
> of structures that are very dynamic, and it's just taking a
> picture in time.  So what you have there is just a picture.

You don't know if that tear developed at the time of injury or developed six months before the injury or has been gradually developing because of wear and tear over a period of a year, two years, or five years. So it is difficult.

Unless you have – you know, you assume that somebody has a normal spine unless they present with symptoms. But there is a group of people that are exposed to heavy duties that will – you know, you will image their spines, and they will have changes, and a lot of them will not experience pain.

But if that person suffers an injury and those structural changes are there, you can see how they can associate, okay, this is here, this is abnormal, and you had an injury. So [the] most logical thing is to think that the injury caused those structural changes.

So, again it will be very difficult because unless you have documentation that the person had a perfectly normal spine before the injury, and then you compare that to a new imaging and a new clinical scenario after the injury, and you can make that assumption more clearly, there's always going to be a doubt about that.

. . . .

Q. I mean, would Mr. Guerrero, with a disc tear, is it possible for him to be asymptomatic for a time period and then the symptoms develop as they go on?

A. There is a possibility of that. As I mentioned, you can have – you could have a disc tear that didn't produce symptoms initially.

But again, you would expect some of those symptoms would develop in the months following the injury, especially if he returned back to work, and then he's back on his regular duties. You would expect that to occur within the time frame of, you know, within three months, six months.

(emphasis added).

[¶21] When Dr. Mosquera's testimony about it being logical that an injury causes structural damage is read in context, it is clear he was providing general information and was not referring to Mr. Guerrero's specific situation. When Dr. Mosquera was asked to opine on Mr. Guerrero's specific circumstances, he was only able to say there was "a possibility" that Mr. Guerrero's lumbar discs were torn in the accident although he remained asymptomatic for several months afterwards. The medical testimony did not

9

satisfy Mr. Guerrero's burden of proof.

[¶22] Furthermore, Dr. Mosquera's initial understanding, based upon his discussions with Mr. Guerrero, that he suffered an acute injury to his back several months before when he fell backward, hit a guard and then fell to the ground is not supported by the other medical records. Mr. Guerrero did not tell the hospital personnel that he fell onto his back or report to his doctors that he had back pain until months after the accident. A hearing examiner is not bound by a medical expert's opinion when it is based "upon an incomplete and inaccurate medical history provided by the claimant." *Middlemass,* ¶ 29, 259 P.3d at 1168*,* quoting *Watkins v. State ex rel. Wyo. Medical Comm'n,* 2011 WY 49, ¶ 25, 250 P.3d 1082, 1091 (Wyo. 2011) (other citations omitted).

[¶23] Mr. Guerrero argues, in the alternative, that the work accident aggravated a preexisting condition in his back. Preexisting conditions are generally excluded from the definition of compensable injury. Wyo. Stat. Ann. § 27-14-102(a)(xi)(F). However, an employee who has a pre-existing condition may still recover if his "employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." *Dutcher,* ¶ 14, 223 P.3d at 562, citing *Lindbloom v. Teton Int'l,* 684 P.2d 1388, 1389 (Wyo. 1984) and Larson's Workmen's Compensation Law. "To prove aggravation of a preexisting condition, a claimant must demonstrate by a preponderance of the evidence that the work contributed to a material degree to the aggravation of the condition." *Middlemass,* ¶ 15, 259 P.3d at 1165, quoting *Dutcher,* ¶ 15, 223 P.3d at 562.

[¶24] Mr. Guerrero did not meet his burden of proving the work accident materially aggravated a preexisting condition in his back because Dr. Mosquera was only able to say it "could have" aggravated preexisting lesions of the discs, disc bulges or facet disease in his back. The medical expert was unable to say that it was more probable than not the work accident caused a material aggravation of a preexisting condition.

[¶25] Mr. Guerrero also asserts that medical evidence was unnecessary and his testimony that his back was asymptomatic prior to the work accident was sufficient to establish the causation element of his claim. In *Thornberg,* 913 P.2d at 867, we analyzed precedent holding that medical expert testimony is not always required to establish causation. *See, e.g.*, *Forni v. Pathfinder Mines,* 834 P.2d 688, 693 (Wyo. 1992); *Hansen v. Mr. D's Food Center,* 827 P.2d 371, 373 (Wyo. 1992); *Gray v. State ex rel., Wyo. Workers' Safety & Comp. Div.,* 2008 WY 115, ¶ 17, 193 P.3d 246, 251-52 (Wyo. 2008). We stated: "Generally, when a single incident is alleged to have caused an injury, medical testimony is not required if it is not essential to establish a causal connection between the occurrence and the injury." *Thornberg,* 913 P.2d at 867. However, to avoid the medical testimony requirement, the injury or condition must be "'immediately and directly or naturally and probably'" the result of the workplace incident. *Id.,* quoting *Hansen,* 827 P.2d at 373. In the absence of an obvious connection between the incident

10

and the medical condition, *"medical testimony may be essential to establish a causal connection." Id.*

[¶26] Mr. Guerrero argues his situation is similar to *Murray v. State ex rel., Wyo. Workers' Safety & Comp. Div.,* 993 P.2d 327 (Wyo. 1999). In *Murray,* we concluded the employee had shown a sufficient causal connection between his work activities and his development of urticaria (hives) even though he could not establish the precise trigger of his symptoms. We stated:

> "Proof of prior good health and change immediately following and continuing after an injury may establish that an impaired condition was due to the injury." *Waldorf Corporation v. Industrial Commission,* 303 Ill.App.3d 477, 236 Ill.Dec. 890, 708 N.E.2d 476, 480 (1999); *see also Davis v. General Electric Company,* 991 S.W.2d 699, 706-707 (Mo.App. S.D.1999). "[E]vidence of the timing of symptoms has been specifically recognized as a competent way of studying causation; 'the manner in which the disease developed, with reference to the claimant's medical and work history' is entirely appropriate for the court to consider." *Kiczula v. American National Can Company,* 310 N.J.Super. 293, 708 A.2d 742, 746 (1998) (quoting *Fiore v. Consolidated Freightways,* 140 N.J. 452, 659 A.2d 436 (1995) considering occupational disease).

*Id.* at 332-33. This is basically the same concept we recognized in *Thornberg,* i.e., medical evidence is not required to establish a causal connection when the injury is immediately and directly or naturally and probably the result of the work-related incident.

[¶27] *Murray* does not support Mr. Guerrero's argument. In that case, Murray's symptoms developed immediately after he was exposed to chemicals at work. Mr. Guerrero, in contrast, did not report his back pain until months after the work accident. That distinction makes Mr. Guerrero's situation more akin to *Stevens,* 2014 WY 153, 338 P.3d 921. There, the question was whether the requisite causal connection was established when the employee demonstrated that she had no known hip problems before her work-related fall and then developed a hip problem after the fall. We expressly rejected application of the *Murray* rationale in *Stevens* because the employee made no documented report of her hip problem for over a month after the fall and did not seek treatment of her hip condition for more than two months after the fall. *Id.,* ¶ 54, 338 P.3d at 933.

[¶28] Mr. Guerrero's report of his back problems was even more remote than Stevens'. He experienced a distinct injury to the front of his body in June 2011, and even though he

was receiving regular medical care for his injury, did not report any back pain to Dr. Hartsaw until October 2011. Under these circumstances, Mr. Guerrero's back injury was not an immediate and direct or natural and probable result of the workplace incident. Expert medical testimony was critical to establish causation and Dr. Mosquera's testimony did not satisfy the "medical probability" standard. The hearing examiner's conclusion that Mr. Guerrero did not satisfy his burden of proving his back problem was caused by the work-related accident is not contrary to the overwhelming weight of the evidence and is, therefore, supported by substantial evidence.

## 2. Second Compensable Injury

[¶29] Mr. Guerrero asserts the OAH erred by failing to properly apply the second compensable injury rule. "The second compensable injury rule applies when 'an initial compensable injury ripens into a condition requiring additional medical intervention.'" *Carabajal v. State ex rel., Wyo. Workers' Safety & Comp. Div.,* 2005 WY 119, ¶ 12, 119 P.3d 947, 951 (Wyo. 2005), quoting *Yenne–Tully v. State ex rel. Workers' Safety & Comp. Div.,* 12 P.3d 170, 172 (Wyo. 2000). In order to prove a second compensable injury, "the claimant must show, by a preponderance of the evidence, that it is more probable than not that there exists a causal connection between the first and second injuries." *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Kaczmarek,* 2009 WY 110, ¶ 11, 215 P.3d 277, 282-83 (Wyo. 2009). Stated another way, "'[u]nder the second compensable injury rule, a subsequent injury or condition is compensable if it is causally related to the initial compensable injury.'" *Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2012 WY 164, ¶ 9, 291 P.3d 297, 301 (Wyo. 2012), quoting *Alvarez v. State ex rel. Wyo. Workers' Comp. Div.,* 2007 WY 126, ¶ 18, 164 P.3d 548, 552 (Wyo. 2007). *See also State ex rel. Dep't of Workforce Services, Workers' Safety & Comp. Div. v. Hartmann,* 2015 WY 1, ¶ 20, 342 P.3d 377, 382-83 (Wyo. 2015).

[¶30] The OAH has the responsibility to invoke and apply the correct rules of law, including the second compensable injury rule, to workers' compensation claims. *Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 996 P.2d 679, 687 (Wyo. 2000). Contrary to Mr. Guerrero's assertion, the OAH did identify and apply the second compensable injury rule to his claim. It concluded that Mr. Guerrero did not meet his burden of proving he was entitled to benefits under the rule. Thus, Mr. Guerrero's argument that the OAH erred by failing to apply the second compensable injury rule is not correct.

[¶31] Mr. Guerrero also asserts that he was entitled to an award of benefits for his back under the rule. Pursuant to the second compensable injury rule, Mr. Guerrero had the burden of proving the injury to the front of his body somehow ripened into an injury to his back. In order to make the causal connection, a claimant must present evidence demonstrating that the initial work injury contributed to the second injury. *Hoffman,* ¶ 9, 291 P.3d at 302. Mr. Guerrero does not direct us to any evidence showing that his June

2011 injury to his left groin, lower abdomen, leg and knee contributed to his back problems. Consequently, the hearing examiner correctly ruled that Mr. Guerrero was not entitled to worker's compensation benefits under the second compensable injury rule.

[¶32] Affirmed.