# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 53

**APRIL TERM, A.D. 2016**

**May 20, 2016**

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

MARY LEIB,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel., DEPARTMENT
OF WORKFORCE SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-15-0235

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*

> *Ethelyn (Lynn) Boak, Cheyenne, Wyoming.*

*Representing Appellee:*

> *Peter K. Michael, Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Samantha Caselli, Assistant Attorney General.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Chief Justice.**

[¶1]  Appellant, Mary Leib, sought benefits from the Wyoming Workers' Compensation Division after she developed abscesses in her breasts.  The Division denied the claim.  Ms. Leib requested a contested case hearing, and the Medical Commission upheld the Division's determination after finding that she had not met her burden of proving that her condition was related to her employment.  Ms. Leib appealed to the district court, which affirmed the Medical Commission's order.  She challenges the district court's decision in this appeal.  We affirm.

## ISSUES

[¶2]   Ms. Leib presents the following issues:

1. Did the Medical Commission in effect increase Appellant's burden of proof to an unsustainable standard of medical certainty by requiring the Appellant to identify the bacteria that caused her infection?

2. Did the Medical Commission give undue weight to the Division's expert witness?

## FACTS

[¶3]   Ms. Leib was employed as a maintenance worker for Laramie County Community College in Cheyenne, Wyoming.  She began working on the grounds of the College in April 2012.  As part of her duties as a groundskeeper, Ms. Leib was required to work with dirt that was mixed with untreated manure from livestock kept on campus and from traveling circus animals.

[¶4]   In June 2012, approximately two weeks after she began planting flowers using the dirt and manure mixture, Ms. Leib experienced pain and swelling in both of her breasts.  On June 18, she sought treatment at the emergency room.  Ms. Leib was diagnosed with mastitis, an infection of the breast tissue, and treated with antibiotics and pain medication.

[¶5]   Ms. Leib went back to work and continued to experience pain and swelling in her breasts.  She returned to the emergency room on June 26 and was admitted to the hospital.  This time, a breast surgeon performed an incision surgery to drain the abscesses in Ms. Leib's breasts and relieve swelling.  A culture collected following her surgery indicated that Ms. Leib had a peptostreptococcus (commonly referred to as "strep") bacterial infection.

1

[¶6]    Ms. Leib returned to work on July 9 and continued to plant flowers with the dirt and manure mixture. Several weeks later, her breasts swelled again, causing her surgical incisions to split open. On August 8, 2012, she filed an injury report with the Workers' Compensation Division. She had a second incision and drainage surgery one week later. A subsequent culture indicated that several different types of peptostreptococcus bacteria were present.

[¶7]    In September 2012, the Workers' Compensation Division denied Ms. Leib's claim for benefits. The Division found that her infections did not meet the definition of "injury" under the worker's compensation statutes and that she had not established her infections were the result of her employment. The Division referred the case to the Office of Administrative Hearings for a contested case hearing. The parties agreed that the case presented a medically complex issue, and the OAH transferred the case to the Medical Commission for a hearing.

[¶8]    The Medical Commission held a contested case hearing on June 6, 2014. Ms. Leib's theory of her injury was that she developed her infection as a result of exposure to bacteria contained in the dirt and manure mixture at LCCC. Ms. Leib presented expert testimony via deposition from Dr. Howard Willis, a primary care physician and ER doctor. He testified that Ms. Leib's infection most likely occurred in the context of her employment. Dr. Willis' testimony was disputed by expert testimony from Dr. Mark Dowell, an infectious disease physician. He testified that there was no causal relationship between Ms. Leib's work and the abscesses in her breasts.

[¶9]    Following the hearing, the Medical Commission issued a decision upholding the Division's final determination. The Commission concluded that Dr. Dowell was more credible than Dr. Willis:

> The Medical Panel finds that the employee/claimant has not met her burden of proof in establishing that the workplace was the cause of her breast infections. Evidence was not provided that would credibly establish that the streptococcus was actually determined to exist in the dirt/manure that she was working with. As Dr. Dowell indicated, those organisms are found in a wide variety of locations, and cannot be specifically attributed to her workplace. In addition, we weighed the relative credibility and qualifications of the competing expert medical opinions in this matter and find that Dr. Dowell, as a board-certified infectious disease specialist, has far more credibility on these issues than Dr. Willis, who is far more generally trained as an osteopathic physician, and he does not carry the board certifications provided by Dr. Dowell.

2

We find that Dr. Dowell testified credibly, and indicated that under the circumstances, he could not attribute her medical condition to the workplace. Dr. Willis, on the other hand, is not board certified and has limited experience in the infectious disease field. Dr. Willis, much like Ms. Leib, placed exceptionally heavy weight on the temporal connection between the abscesses and the workplace, but failed to make a credible connection tying the two specifically together to the condition of the workplace. The offending manure/dirt pile was never tested or examined in any fashion. The creation, maintenance and makeup of any substance in the materials from the pile was never established.

Under the circumstances, with the burden of proof being Ms. Leib's in this matter, we find and conclude that the employee/claimant has failed to meet her burden of proof. There are simply too many possibilities of exposure outside the workplace to substantiate her claim that her condition was caused by and due to her workplace exposure. Therefore, the *Final Determination* of the Division of September 6, 2012, denying coverage for the care and treatment is hereby **affirmed**.

(Emphasis in original.) The district court upheld the Medical Commission's decision. This appeal followed.

## *STANDARD OF REVIEW*

[¶10] When we consider an appeal from a district court's review of an administrative agency's decision, we review the case as though it had come directly from the administrative agency. *Newman v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 14, ¶ 8, 341 P.3d 1066, 1069 (Wyo. 2015) (citing *CalCon Mut. Mortg. Corp. v. State ex rel. Wyo. Dep't of Audit*, 2014 WY 56, ¶ 6, 323 P.3d 1098, 1101 (Wyo. 2014)). Review of an administrative agency's action is governed by the Wyoming Administrative Procedure Act, which provides that we hold unlawful and set aside agency action, findings and conclusions found to be:

. . .

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

3

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2013).

[¶11] Pursuant to this statute, we review an administrative agency's findings of fact using the substantial evidence test. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's decision. *Id.*, ¶ 11, 188 P.3d at 558. Findings of fact are supported by substantial evidence if, from the evidence in the record, this Court can discern a rational premise for the agency's findings. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 11, 259 P.3d 1161, 1164 (Wyo. 2011). We defer to the hearing examiner's determination of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence. *Leavitt v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 95, ¶ 18, 307 P.3d 835, 840 (Wyo. 2013). As always, we review an agency's conclusions of law *de novo*, and "'[w]e will affirm an agency's legal conclusion only if it is in accordance with the law.'" *Dale*, ¶ 26, 188 P.3d at 561-62 (quoting *Diamond B Services, Inc. v. Rohde*, 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo. 2005)).

## *DISCUSSION*

[¶12] A compensable injury is one "arising out of and in the course of employment[.]" Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2013). In order to show that the compensable injury arises out of or in the course of employment, the worker's compensation claimant has the burden of proving each of the essential elements of the claim by a preponderance of the evidence, including a causal connection between the work-related incident and the injury. *Stevens v. State ex rel. Dep't of Workforce Servs.*, 2014 WY 153, ¶ 35, 338 P.3d 921, 929 (Wyo. 2014). The claimant must show the causal connection to a reasonable degree of medical probability. Typically, this requires expert medical testimony that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation, or acceleration of the injury. *Id.*, ¶ 50 n.6, 338 P.3d at 932 n.6.

[¶13] In her first issue, Ms. Leib claims the Medical Commission improperly elevated

4

her burden of proof by requiring her to identify the bacteria that caused her infection. Based on the Commission's statements that the dirt and manure mixture at LCCC was never tested or examined to determine its makeup, Ms. Leib claims the Commission required her to demonstrate, to a degree of medical certainty, that her injury was caused by the conditions of her employment. She claims it was not reasonable to expect her to test the dirt and manure mixture two months after her infection developed because the content of the mixture was ever-changing. Ms. Leib contends the Medical Commission's statements in this case are analogous to those in *Murray v. State ex rel. Wyo. Workers' Safety & Compensation Div.*, 993 P.2d 327 (Wyo. 1999), where we held that the claimant's inability to identify the specific source of his injury did not preclude a finding of causation as a matter of law. Accordingly, Ms. Leib contends that, as in that case, we should reverse the Medical Commission's decision. We do not agree.

[¶14] In *Murray*, the claimant sought worker's compensation benefits when hives appeared on his wrists after drawing a sample of raw gas in the course of his employment. The Division found that "Murray's inability to identify the precise chemical which caused his skin problem constituted failure to prove a compensable injury as a matter of law." *Id.*, 993 P.2d at 328. The claimant appealed and this Court found that the hearing examiner had erred when he "failed to weigh the circumstantial evidence which tended to show that the [injury] was causally related to Murray's employment." *Id.* at 332. We stated that

> "Proof of prior good health and change immediately following and continuing after an injury may establish that an impaired condition was due to the injury." *Waldorf Corporation v. Industrial Commission*, 303 Ill. App. 3d 477, 708 N.E.2d 476, 480, 236 Ill. Dec. 890 (Ill.App. 1st Dist. 1999); *see also Davis v. General Electric Company*, 991 S.W.2d 699, 706-707 (Mo.App.S.D. 1999). "[E]vidence of the timing of symptoms has been specifically recognized as a competent way of studying causation; 'the manner in which the disease developed, with reference to the claimant's medical and work history' is entirely appropriate for the court to consider." *Kiczula v. American National Can Company*, 310 N.J. Super. 293, 708 A.2d 742, 746 (N.J. App. 1998) (quoting *Fiore Consolidated Freightways*, 140 N.J. 452, 659 A.2d 436 (1995) considering occupational disease). Indeed, we have recognized that when a single incident injury is so "[immediate] and directly or naturally and probably the result of an accident, . . . medical evidence is not essential to find a causal connection." *Thornberg v. State ex rel. Wyoming Workers' Compensation Division*, 913 P.2d 863, 867 (Wyo. 1996) (quoting *Hansen*, 827 P.2d 371 at 373 (Wyo. 1992)).

5

*Murray*, 993 P.2d at 332-33. While we recognized that, in certain circumstances, the temporal connection between a work-related incident and an adverse change in health can be "a competent way of studying causation," we did not hold that such a temporal relationship will necessarily be sufficient to establish causation. In fact, we stated that "where a medical question is complex, and the fact finding must be done in a realm that appropriately relies upon technical medical knowledge and expertise, medical testimony should not be ignored." *Id.* at 332 (quoting *Forni v. Pathfinder Mines*, 834 P.2d 688, 693 (Wyo. 1992)); *see also Stevens*, ¶ 53, 338 P.3d at 933.

[¶15] The holding in *Murray* is distinguishable from the present case. In this case, the Medical Commission did not determine that Ms. Leib's inability to provide evidence of the makeup of the dirt and manure mixture precluded her from demonstrating causation as a matter of law. Rather, the Medical Commission concluded that, in light of all the evidence presented, including the lack of testing on the dirt and manure mixture, Ms. Leib did not meet her burden of proving that her injury was related to a workplace condition.

[¶16] The experts in this case disagreed about the cause of Ms. Leib's breast abscesses. Ms. Leib's expert, Dr. Willis, testified that Ms. Leib's condition was caused by a bacterial infection originating from the dirt and manure mixture she used in her employment with LCCC. According to Dr. Willis,

> Ms. Leib came into contact with multiple species of gram positive [anaerobic streptococcal] bacteria. This most likely occurred in the context of her employment, i.e., direct contact with manure and other fecal matter based fertilizer in the process of her grounds keeping responsibilities.
>
> There was no specific vector identified however the bilateral nature of the infections indicates the possibility of generalized exposure of her upper body to the inoculate. This was most likely due [to] the expected work load with heavy physical activity. This physical activity may have opened the pores of her skin (during perspiration) allowing an entry site for the bacteria.

As noted by the Medical Commission, however, Dr. Willis indicated that he was uncertain about the actual cause of her infection. In his deposition testimony, he stated that "[Ms. Leib] basically had some sort of an abscess. I'm not sure that it actually involved mastitis. In other words, I don't know that it was actually involving the tubules of the mammary ducts, or this was spread down from the skin and above." When asked about the specific mechanism of her infection, Dr. Willis stated:

6

Being that I wasn't there when [the bacteria] arrived I can only surmise. My suspicion – and as I put it in my note on the 18th of October, I suspect that because she was working in an environment that would cause her to be perspiring, opens up the pores, I believe she got a sufficient amount of inoculate of something. I don't know if it was some sort of manure-based fertilizer or something that – it was my understanding she was not wearing much protective clothing. In other words, her upper body was more or less exposed in – what would [you] call it, tank top?

Upon cross-examination, however, Dr. Willis indicated a variety of other possible sources of Ms. Leib's infection, including her choice of clothing or perspiration outside the workplace. Ms. Leib also denied that she ever wore a tank top to work.

[¶17] The Division's expert, Dr. Dowell, is a board-certified infectious disease specialist. In his opinion, Ms. Leib's breast abscesses were not caused by a streptococcus infection or by any other organism. At the hearing before the Medical Commission, Dr. Dowell noted that Dr. Willis was not trained in infectious diseases and that some of Dr. Willis' statements "from just strictly a professional standpoint don't make any sense." Dr. Dowell testified that the bacterial organisms grown from Ms. Leib's cultures are often seen in women with breast infections and do not cause infection:

We do not believe it has anything to do with causation at all. We think that it is simply there probably enjoying the free food, if you will, in terms of the pertinacious material in the breast and the drainage, but we do not direct our treatment toward that organism at all. . . . Because I have seen this organism [drawn] out of women that – from many different backgrounds that are homemakers and they come in with breast abscesses. And I will tell you that a lot of these type[s] of breast issues do not grow a pathogen in my experience.

When asked whether it would be possible for manure to cause infection, Dr. Dowell stated that it was highly unlikely:

It is the [great] exception that exposure to manure leads to infection in the first place. If you think about what all of us do outside all of the time, we have breaks in our skin all of the time when we're working in the yard and 99.999 percent of the time, nothing happens. So it is very much the exception that exposure to manure by itself leads to anything.

7

He further testified that "It's an organism we often see in this setting in these kind of breast issues. I think it is not pathogenic here. It is not causing the problem." Ultimately, Dr. Dowell concluded that "to a very high degree of medical probability, I don't think there is any relationship at all" between Ms. Leib's work and her infection.

[¶18] When considered in the context of the competing expert testimony in this case, it is clear that the Medical Commission's statements that the dirt and manure mixture was never tested to determine its content did not operate to elevate Ms. Leib's burden of proof. The Medical Commission, as the trier of fact, had a duty to weigh the evidence and determine the credibility of witnesses. *Dale*, ¶ 11, 188 P.3d at 558-59. Based on the fact that Dr. Willis acknowledged there were multiple possible sources for Ms. Leib's infection, and that Dr. Dowell testified that it was very unlikely that the bacterial organisms found after Ms. Leib's surgery were pathogenic, the Commission determined that the temporal connection between Ms. Leib's exposure to the dirt and manure mixture and her injury was not sufficient to establish causation. The Medical Commission did not require Ms. Leib to demonstrate, to a degree of medical certainty, that her injury was related to a condition of the workplace. We find no error in the Medical Commission's application of Ms. Leib's burden of proof.

[¶19] In her second issue, Ms. Leib contends the Medical Commission gave undue weight to Dr. Dowell's testimony because his testimony "was speculative and demonstrated that he was unfamiliar with [Ms. Leib's] case." According to Ms. Leib, Dr. Dowell's testimony could not be relied upon because he inaccurately stated, in his initial report to the Division, that Ms. Leib had experienced "a history of occasional drainage and problems with her breasts for many years." Ms. Leib claims that, as a result, the Medical Commission should not have given "any weight" to Dr. Dowell's testimony.

[¶20] As we have previously stated, it is the Medical Commission's responsibility to determine the relative weight to assign to expert testimony:

> The Wyoming Legislature established the Medical Commission with the implicit recognition that "many contested claims involve complex medical issues." *French v. Amax Coal W.*, 960 P.2d 1023, 1030 (Wyo. 1998). When presented with expert medical testimony, the Commission, "as the trier of fact, is responsible for determining relevancy, assigning probative value, and ascribing the relevant weight to be given to the testimony." *Decker* [*v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160], ¶ 33, 124 P.3d [686,] 697 [(Wyo. 2005)] (quoting *Baxter v. Sinclair Oil Corp.*, 2004 WY 138, ¶ 9, 100 P.3d 427, 431 (Wyo. 2004)); *see also* [*In re*] *Nagle*, [2008 WY 99,] ¶ 15, 190 P.3d [159,] 166 [(Wyo.

2008)] (commission must apply its fact-finding expertise in accordance with governing law). If the Commission had a reasonable basis for concluding as it did, this Court does not "invade the province of the trier of fact by reaching a different conclusion on appeal." *See Schepanovich* [*v. U.S. Steel Corp.*], 669 P.2d [522,] 529 [(Wyo. 1983)] (citations omitted).

*In re Worker's Comp. Claim of McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 38, 311 P.3d 608, 617 (Wyo. 2013).

[¶21] Ms. Leib correctly notes that Dr. Dowell misstated her medical history in his initial report to the Division. However, we find no support for Ms. Leib's contention that Dr. Dowell's misstatement of her medical history was a critical element of his opinion with respect to the cause of her infection. At the hearing before the Medical Commission, Dr. Dowell was specifically questioned about the misstatement in his initial report. He stated that he "would be more than glad to withdraw [the statement] because it's not really relevant to what we're talking about right now." When asked whether his opinion with respect to causation would remain the same regardless of whether Ms. Leib had a history of occasional drainage problems with her breasts, Dr. Dowell stated "Oh, yeah. My opinion wouldn't change at all." When he was asked whether he had based his opinion on the inaccurate medical history, Dr. Dowell responded "No, I did not." Further, Dr. Dowell's testimony at the hearing supports the conclusion that Ms. Leib's medical history was a non-critical factor in arriving at his opinion. The record reveals that Dr. Dowell's opinion was based primarily on the facts that (1) the organisms found in Ms. Leib's infection arise in a variety of settings; (2) the organisms are very seldom found to be pathogenic to the condition experienced by Ms. Leib; and (3) exposure to manure is very unlikely to result in the bacterial infection found in the cultures of Ms. Leib's breast abscesses.

[¶22] Ms. Leib also claims the Medical Commission should have discounted Dr. Dowell's testimony because he did not conduct a physical examination of Ms. Leib before forming his opinion with respect to causation. However, Ms. Leib offers no explanation as to how a physical examination would have assisted Dr. Dowell in forming his opinion with respect to causation. She also offers no reason as to why Dr. Willis' opinion, which was also not based on any physical examination of Ms. Leib, should not be similarly discredited. We note that the Division's regulations provide that "The Division may request a non-treating health care provider to conduct a paper review of an injured worker's medical records for the purpose of obtaining a second opinion regarding the diagnosis, prognosis, or treatment of an employee's injury complaints." *Rules, Regulations and Fee Schedules of the Wyoming Workers' Compensation Division*, ch. 10, § 15(a). The Medical Commission was not prohibited from giving due weight to Dr. Dowell's medical opinion because he did not conduct a physical examination of Ms.

Leib.  The Commission could have reasonably decided, as it did, to give greater weight to the testimony of Dr. Dowell than that of Dr. Willis.

[¶23]  Affirmed.