KAUTZ, Justice.
[¶1] After a contested case hearing, the Office of Administrative Hearings (OAH) concluded that Appellee Wyoming Workers' Compensation Division (Division) had properly terminated Appellant Troy C. Coggins' temporary total disability (TTD) benefits because he had reached maximum medical improvement (MMI) and suffered an ascertainable loss. The district court affirmed the OAH decision, and Mr. Coggins appealed to this Court. We affirm.
ISSUE
[¶2] Mr. Coggins presents the following issue for our review:
A. Whether the Office of Administrative Hearings['] ... determination that [Mr.] Coggins had reached MMI and no longer qualified for TTD benefits conforms to current law and is supported by substantial evidence.
FACTS
[¶3] Mr. Coggins injured his back on June 26, 2012, while working as a truck driver for Mullinax Concrete Services. He filed a report of injury, and the Division found his injury compensable. Mr. Coggins was treated conservatively with pain medication and physical therapy and went back to work about a week after the accident. Mr. Coggins continued to work until the end of 2014 when pain in his lower back and pain radiating down his right leg became unbearable. He stopped working and began receiving TTD benefits. An MRI showed a right paracentral protrusion at L5-S1 with a tear at L5 and a minimal disc bulge at L4-L5.
[¶4] James Ulibarri, M.D. performed an L5-S1 discectomy on June 17, 2015. Mr. Coggins continued to have radicular pain down his right leg after the surgery. Electrodiagnostic studies confirmed he was suffering from radiculopathy. Radiculopathy is defined as:
*558 significant alteration in the function of a single or multiple nerve roots and is usually caused by mechanical or chemical irritation of one or several nerves. The diagnosis requires clinical findings including specific dermatomal distribution of pain, numbness, and/or parasthesias. Subjective reports of sensory changes are more difficult to assess; therefore, these complaints should be consistent and supported by other findings of radiculopathy. There may be associated motor weakness and loss of reflex. A root tension sign is usually positive. The identification of a condition that may be associated with radiculopathy (such as a herniated disk ) on an imaging study is not sufficient to make a diagnosis of radiculopathy ; clinical findings must correlate with radiographic findings in order to be considered.
Hurt v. State of Wyo., ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div., 2015 WY 106, ¶ 19, 355 P.3d 375, 381 (Wyo. 2015) (quoting the AMA Guides to Evaluation of Permanent Impairment , Sixth Edition ). Tests showed Mr. Coggins' S1 nerve root was swollen and was likely causing his radicular pain.
[¶5] Dr. Ulibarri recommended Mr. Coggins undergo a trial with a spinal cord stimulator to see if that would help his radicular pain. Although the parties in this case do not direct us to a description of a spinal cord stimulator in the record, we explained its function in Morris v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div., 2017 WY 119, ¶ 10, 403 P.3d 980, 983 (Wyo. 2017) : "[A] spinal cord stimulator is a mechanical device with an electrical lead that is placed along the spinal cord. The electrical impulse inhibits the amount of pain signal that reaches the brain. In other words, it tricks the nervous system into not recognizing the pain."
[¶6] Dr. Ulibarri referred Mr. Coggins to Bradley McPherson, M.D. for a spinal cord stimulator trial. Dr. McPherson stated that the purpose of a spinal cord stimulator would be to decrease Mr. Coggins' pain in his right lower extremity. Before a spinal cord stimulator trial could be approved, Mr. Coggins had to meet various requirements, including numerous tests, a psychiatric evaluation and counseling. Mr. Coggins testified that he had complied with the requirements, but, at the time of the contested case hearing, the Division still had not preauthorized the procedure.
[¶7] In May 2016, the Division sent a form to Dr. Ulibarri asking whether he believed Mr. Coggins had reached MMI and had suffered a permanent partial impairment (PPI) as a result of the work injury. Dr. Ulibarri responded that Mr. Coggins had reached MMI on January 7, 2016, and that he had a PPI. The Division, therefore, referred Mr. Coggins to Scott Johnston, M.D. for an independent medical evaluation and permanent impairment rating. Dr. Johnston reviewed Mr. Coggins' medical records and examined him on August 10, 2016. He concluded Mr. Coggins had reached MMI because there had been "no significant change in his symptoms in the past several months." Dr. Johnston assigned Mr. Coggins a permanent impairment rating of 14% of the whole person. The rating took into account Mr. Coggins' ongoing radiculopathy. Mr. Coggins disagreed with the rating and the Division referred him to Ricardo Nieves, M.D. for a second opinion. Like Dr. Johnston, Dr. Nieves stated that Mr. Coggins' was at MMI and rated him as having a 14% of the whole person impairment. Dr. Nieves also stated that Mr. Coggins may benefit from a spinal cord stimulator, but it likely would not change his impairment rating.
[¶8] After Mr. Coggins was rated for PPI, the Division issued a final determination terminating his TTD benefits, effective August 15, 2016. He objected to the final determination and requested a hearing. Mr. Coggins stated that he was unable to work because his injury had caused permanent nerve damage. The OAH held a hearing and concluded the Division had properly ceased paying TTD benefits because Mr. Coggins had reached MMI and had an ascertainable loss. He filed a petition for judicial review of the OAH decision with the district court, and it affirmed the agency decision. Mr. Coggins filed a timely notice of appeal to this Court.
*559 STANDARD OF REVIEW
[¶9] Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017) governs judicial review of administrative decisions:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶10] This Court examines the agency's ruling without giving any deference to the district court's decision. Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div., 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015). See also , Dale v. S & S Builders, LLC, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). In accordance with § 16-3-114(c), we review the agency's factual findings by applying the substantial evidence standard. "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Guerrero, ¶ 12, 352 P.3d at 266 (quoting Bush v. State ex rel. Wyo. Workers' Comp. Div., 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) ). " 'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.' " Morris , ¶ 24, 403 P.3d at 986 (quoting Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011) ).
[¶11] A workers' compensation claimant has the burden of proving all the essential elements of his claim by a preponderance of the evidence. Phillips v. TIC-The Indus. Co. of Wyo., Inc., 2005 WY 40, ¶ 25, 109 P.3d 520, 531 (Wyo. 2005).
If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.
Dale, ¶ 22, 188 P.3d at 561 (citations omitted). " 'We review an agency's conclusions of law de novo, and will affirm only if the agency's conclusions are in accordance with the law.' " Morris , ¶ 25, 403 P.3d at 987 (quoting Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2011 WY 118, ¶ 13, 259 P.3d 1161, 1164 (Wyo. 2011) ).
DISCUSSION
[¶12] Mr. Coggins challenges the OAH determination that he was not entitled to further TTD benefits because he had reached MMI. "Under Wyoming workers' compensation law, the concepts of temporary total disability, maximum medical improvement, *560 ascertainable loss, and permanent partial impairment are interrelated." Morris , ¶ 27, 403 P.3d at 987. TTD benefits are governed by Wyo. Stat. Ann. § 27-14-404 (LexisNexis 2017), which states in relevant part:
(a) If after a compensable injury is sustained and as a result of the injury the employee is subject to temporary total disability as defined under W.S. 27-14-102(a)(xviii), the injured employee is entitled to receive a temporary total disability award for the period of temporary total disability as provided by W.S. 27-14-403(c)....
...
(c) Payment under subsection (a) of this section shall cease prior to expiration of the twenty-four (24) month maximum period specified under subsection (a) of this section if:
...
(ii) The employee has an ascertainable loss, qualifies for benefits under W.S. 27-14-405 or 27-14-406 and the first monthly payment pursuant to either of those sections has been issued to the employee.
Temporary total disability is defined as:
that period of time an employee is temporarily and totally incapacitated from performing employment at any gainful employment or occupation for which he is reasonably suited by experience or training. The period of temporary total disability terminates at the time the employee completely recovers or qualifies for benefits under W.S. 27-14-405 or 27-14-406 [.]
Wyo. Stat. Ann. § 27-14-102(a)(xviii) (LexisNexis 2017). "[T]he purpose of temporary total disability benefits is 'to provide income for an employee during the time of healing from his injury and until his condition has stabilized.' " Phillips , ¶ 27, 109 P.3d at 532 (quoting Pacific Power & Light v. Parsons, 692 P.2d 226, 228 (Wyo. 1984) ).
[¶13] As § 27-14-404(c)(ii) and the definition of TTD state, TTD ends when an employee qualifies for permanent partial impairment benefits under Wyo. Stat. Ann. § 27-14-405 (LexisNexis 2017) :
(f) An injured employee suffering an ascertainable loss may apply for a permanent partial impairment award as provided in this section.
(g) An injured employee's impairment shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment. ...
* * *
(m) If the percentage of physical impairment is disputed, the division shall obtain a second opinion and if the ratings conflict, shall determine the physical impairment award upon consideration of the initial and second opinion. Any objection to a final determination pursuant to this subsection shall be referred to the medical commission for hearing by a medical hearing panel acting as hearing examiner pursuant to W.S. 27-14-616.
[¶14] A claimant has suffered an "ascertainable loss" under § 27-14-404(c)(ii) and § 27-14-405(f) when "it is apparent that permanent physical impairment has resulted from a compensable injury, the extent of the physical impairment due to the injury can be determined and the physical impairment will not substantially improve or deteriorate because of the injury." Section 27-14-102(a)(ii). An employee is considered to have suffered an ascertainable loss when his condition is at MMI. Morris , ¶ 29, 403 P.3d at 987-88 (citing State ex. rel. Wyo. Workers' Comp. Div. v. Gerdes, 951 P.2d 1170, 1174 n.1 (Wyo. 1997) ). The workers' compensation rules define MMI as:
A medical condition or state that is well stabilized and unlikely to change substantially in the next year, with or without medical treatment. Over time, there may be some change; however, further recovery or deterioration is not anticipated. This term may be used interchangeably with the term "ascertainable loss[,"] defined in W.S. § 27-14-102(a)(ii).
Wyo. Workers' Comp. Div. Rules, Regulations and Fee Schedules, Ch. 1, § 4(ah) (2011).[1]
*561 [¶15] This Court explained in Phillips, ¶ 33, 109 P.3d at 534, that generally the
commonest question is when does the "healing period" end and "stabilization" occur? The answer to this question-which is sometimes phrased as "when has maximum medical improvement (MMI) been reached?" or "when has the condition become stationary?"-determines in most states when temporary benefits cease and when the extent of permanent disability can be appraised, for purposes of making either a permanent partial or a permanent total award.
...
The issue may be a purely medical one. Thus, there may be medical evidence that the period of recuperation is not yet over, that further healing and strengthening may be anticipated, and that it is still too early to appraise claimant's permanent disability. Conversely, there may be medical testimony that the claimant has recovered as much as he or she ever will, and that any lingering disability is permanent. The fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition. But, if treatment was given in the hope of improving the condition, the later discovery that no improvement resulted does not bar a finding that the healing period persisted throughout the process of treatment. The persistence of pain may not of itself prevent a finding that the healing period is over, even if the intensity of the pain fluctuates from time to time, provided again that the underlying condition is stable. ...
4 Larson's Workers' Compensation Law § 80.03[2], [3], and [4] (2004) (footnotes omitted).
See also , Morris , ¶ 33, 403 P.3d at 989. Thus, under our precedent, an injured employee is considered at MMI or has an ascertainable loss even if he still has pain which may need further medical treatment so long as substantial improvement of the underlying condition would not result from such treatment.
[¶16] The Division terminated Mr. Coggins' TTD benefits on August 15, 2016. The OAH upheld the Division's decision that Mr. Coggins was no longer entitled to TTD benefits because he had reached MMI and suffered an ascertainable loss. Mr. Coggins argues that he had not reached MMI or had an ascertainable loss because he still suffered severe pain and his physicians had recommended a spinal cord stimulator with the hope that it might relieve his pain and increase his level of function.
[¶17] The OAH reviewed the evidence offered at the hearing and reached the following conclusions:
50. The first issue to be decided is whether the Claimant was at ascertainable loss in 2016, and therefore, no longer entitled to receive temporary total disability benefits. Submitted into evidence were the opinions of three separate physicians regarding the Claimant's status. Dr. Johnston who did the initial impairment rating awarded the Claimant a 14% whole person impairment rating. At the request of the Claimant for a second opinion, Dr. Nieves performed an impairment rating on December 10, 2016. Dr. Nieves also felt that the Claimant was at ascertainable loss and awarded the Claimant a 14% whole person impairment rating. The third opinion is that of Dr. Ulibarri who initially indicated that the Claimant was at ascertainable loss as of January 7, 2016. In his medical records, Dr. Ulibarri then retreated from that opinion given the Claimant's ongoing radiculopathy and extended the period of disability for a "couple of months." Dr. Ulibarri, in his deposition testimony, then testified that the period of temporary total disability following the procedure that was performed on the Claimant on June 17, 2015 can run anywhere from three months to twelve months. This would place the Claimant at ascertainable loss as of June 17, 2016. Dr. Ulibarri, in his December 14, 2016 correspondence to Claimant's *562 counsel, indicated that, "A question of whether he is at maximum medical improvement is not clear because if he has improvement with the spinal cord stimulator that would probably mark the end of his MMI." This, of course, is the position of the Claimant who contends that he is not at maximum medical improvement due to the potential benefits he may receive from the spinal implant stimulator. However, as noted above, ascertainable loss or maximum medical improvement is not that point in time when a claimant's medical treatment has ended, but is the period when a claimant's condition has stabilized. Furthermore, the fact that a claimant has continued pain does not prevent a finding of being at ascertainable loss. Herein, the Claimant's treating physician felt that the Claimant's condition had stabilized as of January 7, 2016. At that same time, he also indicated that there had been no improvement for six months. In his deposition, Dr. Ulibarri was asked whether the Claimant was at maximum medical improvement. His response was, "That's a really hard question. I don't know. There is nothing more that I can do to make him better." This, in itself, would indicate that the Claimant's condition had stabilized. Furthermore, the Claimant, himself, testified that there had been no change in his condition from the time following surgery through the date of the hearing. The Office acknowledges the Claimant's contention that the stimulator may reduce his pain and improve his quality of living. However, as noted above, the continuation of pain does not prevent a finding of ascertainable loss. Furthermore, the fact that his pain will be reduced by such stimulator is pure speculation. For one, the Claimant has not been approved for the procedure; and secondly, there is no guarantee that his pain will be reduced. The Office also notes that the only physician [Dr. Nieves] who addressed the recommendation for a stimulator and who found the Claimant to be at ascertainable loss indicated that the procedure would probably not change the Claimant's impairment rating. Thus, based on the medical evidence provided by Dr. Johnston, Dr. Nieves and Dr. Ulibarri, the Office finds that the Claimant's condition had stabilized and in fact, the Claimant was at ascertainable loss as defined under the provisions of the Wyoming Workers' Compensation Act.
The OAH agreed with the Division's decision to terminate Mr. Coggins' TTD benefits on August 15, 2016.
[¶18] Mr. Coggins claims the OAH erred by finding that he had reached MMI. He asserts the OAH decision was erroneous for several reasons. First, he argues the OAH improperly relied upon the fact that he had not yet been approved for the spinal cord stimulator to deny his claim. We agree with Mr. Coggins that the delay in approving the procedure should not, under the circumstances presented here, affect the MMI determination. Dr. Ulibarri and Dr. McPherson both recommended he undergo the procedure, and Dr. Nieves agreed it might be beneficial.
[¶19] Mr. Coggins also claims the OAH erred by relying on the lack of guarantee that the spinal cord stimulator would be successful in treating his pain as a basis for its conclusion that he had reached MMI. We also agree with Mr. Coggins on this issue. In Phillips, ¶ 33, 109 P.3d at 534, we said that "if treatment was given in the hope of improving the condition, the later discovery that no improvement resulted does not bar a finding that the healing period persisted throughout the process of treatment." (Citation omitted.) Thus, the fact that a procedure is not guaranteed to help is not determinative of the question of whether a claimant has reached MMI.
[¶20] The OAH's conclusions regarding the Division's delay in approving the spinal cord stimulator and the lack of guarantee the procedure would be successful were not crucial to its decision. We, therefore, turn to the crux of this matter-whether the OAH properly found that Mr. Coggins had reached MMI even though he may later be treated with a spinal cord stimulator. On May 23, 2016, the Division sent Dr. Ulibarri a document entitled REQUEST FOR PHY SICIAN INFORMATION.
*563 The document stated:
Thank you for your continued assistance with the evaluation and treatment of Troy Coggins. The information we are requesting does not initiate a reduction or cessation of your patient's medical treatment, but rather helps us evaluate the overall treatment and benefit plan. The Division ... is evaluating the need for continued Temporary Total Disability (TTD) benefits for Troy Coggins, who has been on TTD for 18 months.
It then asked whether Mr. Coggins had reached MMI, the date of MMI and whether Dr. Ulibarri believed Mr. Coggins had a PPI as a result of the injury. Dr. Ulibarri responded that Mr. Coggins had reached MMI as of January 7, 2016 because "[h]e has had no improvement for 6 months." He stated that Mr. Coggins had reached MMI, even though he also recognized a "spinal cord stimulator is pending." Dr. Ulibarri further stated that Mr. Coggins had a permanent impairment from the work injury. So, in May of 2016, Dr. Ulibarri believed Mr. Coggins had reached MMI several months before and did not believe the possibility of treatment with a spinal cord stimulator affected the MMI finding.
[¶21] However, despite his conclusion that Mr. Coggins had reached MMI in January 2016, Dr. Ulibarri continued to certify Mr. Coggins for TTD. In his October 12, 2016 deposition, Dr. Ulibarri stated that, although patients usually recover from a discectomy in three months, Mr. Coggins had not reached MMI because he had persistent neuropathic pain and may be helped by a spinal cord stimulator. When questioned about the apparent inconsistency between his original statement that Mr. Coggins had reached MMI in January 2016 and his later deposition testimony that Mr. Coggins had not yet reached MMI, Dr. Ulibarri explained:
I guess that's a really hard question. I don't know. There is nothing more that I could do to make him better. He's still-he's not as good as I hope he can be at some point.
And my only hope is that the spinal cord stimulator will get him to that point.
So I guess, yeah, I'd probably have to revise this [MMI statement] that he's still having radiculitis and is not better.
I don't do this procedure [spinal cord stimulator ]. I'm hoping that that could give him some improvement.
He was further questioned about the spinal cord stimulator as follows:
Q. With the spinal cord stimulator... [h]ave you seen patients who have had substantial improvement in their nerve pain?
A. Yes.
Q. And you believe that is [Mr. Coggins'] main pain agent at this point; is that correct?
A. Correct. My understanding is that that's the best indication for a stimulator, not back pain, neuropathic pain.
Q. And that is his current symptom[ ]?
A. Correct.
[¶22] On December 14, 2016, Dr. Ulibarri sent a letter to Mr. Coggins' attorney stating that "[b]ecause he has this chronic radiculopathy, I think that potentially extending it [TTD] to 1 year may be reasonable beginning 06/17/15 through 06/17/2016." Dr. Ulibarri also stated, however, that the question of whether Mr. Coggins had reached MMI was "not clear because if he has improvement with the spinal cord stimulator that would probably mark the end of his MMI." Obviously, Dr. Ulibarri's opinions expressed in the letter are inconsistent with Wyoming law because he stated that TTD should cease one year after surgery but also stated that Mr. Coggins had not yet reached MMI.
[¶23] In Morris, ¶¶ 41-42, 403 P.3d at 992, we upheld the Medical Commission's conclusion that the claimant was at MMI even though her treating physician had recommended a spinal cord stimulator. We said that the spinal cord stimulator was intended to treat pain, not the underlying condition. Id. The same is true of Mr. Coggins' situation. There is no evidence in the record that the spinal cord stimulator will do anything but treat his radicular (nerve) pain. Dr. Ulibarri did not state that the spinal cord stimulator would treat the underlying condition *564 causing the radiculopathy. In this respect, the spinal cord stimulator was no different than pain medication or other palliative measures.[2] Given the spinal cord stimulator was intended to treat only Mr. Coggins' radicular pain and not the physiological condition causing the radiculopathy, the OAH properly discounted Dr. Ulibarri's opinion that Mr. Coggins was not at MMI because he may benefit from a spinal cord stimulator. See , Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo. 2005) (the agency may disregard expert opinion if it finds it is unreasonable).
[¶24] Dr. Nieves also concluded Mr. Coggins had reached MMI, even though he also recognized that a spinal cord stimulator would be an appropriate means of treating Mr. Coggins' pain. Dr. Nieves stated that a spinal cord stimulator could "be of potential benefit" to Mr. Coggins, but "[i]t will not likely change his impairment rating." This assessment properly focuses on the stability of Mr. Coggins' underlying medical condition, not his pain or the treatment of such.
[¶25] The record demonstrates Mr. Coggins' physiological condition had not changed in many months. Mr. Coggins stated that his symptoms had not changed since shortly after the surgery. Dr. Ulibarri stated in May 2016 that Mr. Coggins had not improved in the preceding six months and reiterated during his deposition in October 2016 that there was nothing more he could do to treat Mr. Coggins' back. This evidence showed his medical condition was well stabilized and unlikely to change substantially in the next year, with or without medical treatment.
[¶26] Mr. Coggins stresses that his circumstances differ from Ms. Morris' because he has been diagnosed with radiculopathy while Ms. Morris had not. It is true that one of the points we made in Morris , ¶ 43, 403 P.3d at 992, was that her radiculopathy had not been established with testing. Mr. Coggins, on the other hand, has confirmed radiculopathy. However, the existence of radiculopathy does not mean the employee has not reached MMI. In fact, Dr. Johnston and Dr. Nieves both took Mr. Coggins' radiculopathy into account in his PPI rating. If radiculopathy prevented a finding of MMI, it would not be a consideration in the rating process.
[¶27] Finally, we note that Mr. Coggins seemed to misunderstand the nature of TTD benefits. In Pacific Power & Light, 692 P.2d at 228, this Court explained that the purpose of TTD is to provide income to a worker while he recovers from a work-related injury. The benefits last until his condition has stabilized. Id. Mr. Coggins indicated in his objection to the final determination terminating his TTD that he needed TTD benefits to live on because his nerve injury was permanent. However, under workers' compensation law, when the healing process has ended, the worker is left with an ascertainable loss, and he has been awarded PPI benefits, TTD benefits cease. Of course, he may also qualify for permanent disability benefits under § 27-14-405 for loss of earning capacity.
[¶28] In reviewing the Division's decision to terminate Mr. Coggins' TTD benefits as of August 15, 2016, the OAH properly applied the legal principles regarding TTD, MMI, ascertainable loss, and PPI, which focus on the underlying condition rather than pain. The OAH's decision that Mr. Coggins had reached MMI despite his providers' plan to use a spinal cord stimulator to treat his pain was supported by substantial evidence and was in accordance with the law.
[¶29] Affirmed.

The current version of the rule, Wyo. Workers' Comp. Div. Rules, Ch. 1, § 3(dd) (effective August 24, 2017), contains the same definition of MMI.

Mr. Coggins argues that "his pain is not entirely pall[i]ative, but is neurologic as well," and asserts that the spinal cord stimulator"will relieve both pall[i]ative and radicular pain." These statements demonstrate a misunderstanding of the term "palliative." Palliative means "serving to palliate." "Palliate" means "to ease [ ]symptoms[ ] without curing the underlying disease." Merriam-Webster.com.