# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 68

APRIL TERM, A.D. 2019

*June 5, 2020*

BRENT MCMILLAN,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' COMPENSATION
DIVISION,

Appellee
(Respondent).

S-19-0218

*Appeal from the District Court of Sublette County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Michael J. McGrady, Deputy Attorney General; JC Demers, Senior Assistant Attorney General; Kelly D. Mullen, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Brent McMillan sought workers' compensation benefits listing various symptoms he experienced while working for Unit Drilling Company.  Doctors ultimately diagnosed Mr. McMillan with smoldering multiple myeloma.  The Wyoming Workers' Safety and Compensation Division (the Division) denied benefits because Mr. McMillan failed to establish a causal connection between his injury and employment.[1]   The Medical Commission (the Commission) upheld the denial, rejecting the opinions of Mr. McMillan's medical experts.  The district court affirmed the Commission's decision.  We too affirm.

### *ISSUE*

[¶2]    Is the Commission's determination that Mr. McMillan failed to meet his burden under Wyo. Stat. Ann. § 27-14-603(a) for an injury occurring over a substantial period of time contrary to the overwhelming weight of the evidence?

### *FACTS*

[¶3]    Mr. McMillan worked for Unit Drilling Company for two and a half years—from mid-2011 until November 2013—as a "floor hand" on an oil rig in Sublette County, Wyoming.  In that capacity, he "managed the drilling fluid" and helped maintain the rig.  When handling dry chemicals, he wore a dust mask, a face shield, and safety glasses.  He worked a 12-hour shift for 14 days in a row and then had 14 days off.

[¶4]    In spring of 2013, Mr. McMillan visited his primary physician because he felt tired and achy.  His physician attributed these symptoms to his age and job, as he was a 40-year-old working with 20-year-olds.  Over the course of a couple weeks in November 2013, Mr. McMillan had three separate "episodes" at work.  During the first episode in early November, he felt dizzy and nauseous; he also had a migraine and blurry vision.  During the second episode a week later, he had severe abdominal pain and temporarily lost control of his legs, bladder, and bowels.  During the third episode in mid to late November, he had muscle spasms, nausea, headache, blurred vision, numbness in his hands, arms, and feet, a burning sensation in his legs, and tremors.  Mr. McMillan finished his two-week shift and sought medical treatment.  A diagnosis proved elusive until spring of 2015, when Charles Petrunin, M.D., diagnosed him with smoldering multiple myeloma.[2]

---

[1] The Division also denied benefits because Mr. McMillan did not timely file his claim.  The Office of Administrative Hearings bifurcated the proceedings, submitting the causation issue to the Commission.  The timeliness question is not before this Court.

[2] Dr. Petrunin explained it was difficult to diagnose Mr. McMillan because his symptoms did not "fit into any one particular category or one particular unifying diagnosis very easily."  Finding a unifying diagnosis "require[d] excluding other possibilities."  In addition, Mr. McMillan had a "slowly progressive disease with symptoms that come on very gradually over time as opposed to an acute illness where changes happen very quickly and can be more easily characterized."

1

[¶5]    In October 2015, Mr. McMillan filed a Report of Injury with the Division claiming he injured his entire body on November 13, 2013, while working for Unit Drilling Company.  The report stated his injury consisted of nerve demyelination, neuropathy, chronic pain, attack of the central nervous system, seizure-like symptoms and loss of bowel and bladder control.  It further stated his doctors believed toxic chemical absorption and inhalation caused his injury.  The Division denied benefits because Mr. McMillan did not submit evidence establishing a causal connection between his injury and employment as required by Wyo. Stat. Ann. § 27-14-603(a).  Mr. McMillan objected and the Office of Administrative Hearings referred his claim to the Commission.

[¶6]    The Commission held an evidentiary hearing in May 2018.  In support of his claim, Mr. McMillan submitted hundreds of pages of medical records, and deposition transcripts from David Carpenter, M.D., Dr. Gillespie, and Dr. Petrunin.  Mr. McMillan testified at the hearing.  He generally asserted that his medical condition related to the high concentration of different chemicals released into the air during drilling and fracking, noting that during his last year of employment two fracking rigs were located within 800 feet of his oil rig and those workers wore hazardous material suits and respirators.  In opposition, the Division relied on Mr. McMillan's deposition transcript, which revealed alternative sources of chemical exposure and possible explanations for some of his symptoms unrelated to his employment at Unit Drilling Company.

[¶7]    The Commission "ultimately found the opinions of Drs. Carpenter, Gillespie, and Petrunin lacked expertise or lacked foundation[.]"  In sum, the Commission determined Dr. Carpenter based his opinion on a study of air concentrations of volatile compounds near oil and gas production sites geographically distanced from those Mr. McMillan worked on.  Dr. Gillespie admitted he "did not possess the requisite expertise to opine on the issue of causation[.]"  And Dr. Petrunin's opinions "were medically sound but [] lacked an underlying factual basis as applied to [Mr. McMillan]."  Having rejected those opinions, the Commission concluded Mr. McMillan failed to meet his burden of proof under Wyo. Stat. Ann. § 27-14-603(a)(i)–(iii) and upheld the Division's denial of benefits.[3]  The district court affirmed the Commission's decision.  Mr. McMillan timely appealed.

---

Mr. McMillan's primary care physician, Gordon Gillespie, M.D., described smoldering multiple myeloma as "a syndrome where people develop a monoclonal population of the B cells that become plasma cells" and overpopulate.  "Multiple myeloma causes a constellation of neurologic systems including protein abnormalities, thickening of the serum and increased blood viscosity, increased calcium level, infiltration into multiple organs, in particular into the kidneys, causing kidney insufficiency, . . . fatigue, dizziness, and tingling-type symptoms."  While doctors generally treat multiple myeloma, they monitor smoldering myeloma.  Mr. McMillan's symptoms "were mild enough" that he did not need treatment.  Doctors were monitoring Mr. McMillan because he would inevitably develop multiple myeloma and need chemotherapy.
[3] The Commission did not, as Mr. McMillan asserts, find he proved the requirements in (a)(iv) and (v).  Instead, having found Mr. McMillan failed to satisfy subsection (a)'s first three requirements, it declined to address the remaining two.

2

[¶8]    "We review an administrative appeal as if it came directly from the administrative agency, giving no deference to the district court's ruling on the appeal." *Boyce v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 99, ¶ 20, 402 P.3d 393, 399 (Wyo. 2017) (citing *Price v. State ex rel. Wyo. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017)).   The Wyoming Administrative Procedure Act governs our review and requires we "[h]old unlawful and set aside agency action, findings and conclusions found to be . . . [u]nsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute." Wyo. Stat. Ann. § 16-3-114(c)(ii)(E) (LexisNexis 2019); *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019) (citation omitted) (where both parties present evidence, the substantial evidence test applies).   "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Boyce*, ¶ 21, 402 P.3d at 399 (quoting *Price*, ¶ 7, 388 P.3d at 790).   Because the Commission decided Mr. McMillan failed to meet his burden of proof,

> we will decide whether there is substantial evidence to support the [Commission]'s decision to reject the evidence offered by [Mr. McMillan] by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.  If, in the course of its decision making process, the [Commission] disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the [Commission] could reasonably conclude as it did, based on all the evidence before it.

*Id.* ¶ 21, 402 P.3d at 399–400 (quoting *Price*, ¶ 7, 388 P.3d at 790).[4]

*DISCUSSION*

[¶9]    Mr. McMillan contends the Commission's reasons for rejecting Dr. Carpenter's and Dr. Petrunin's causation opinion were not valid and, thus, the Commission's decision is

---

[4] Though Mr. McMillan characterizes aspects of the Commission's decision as arbitrary and capricious, his arguments are more appropriately addressed under the substantial evidence standard. *See Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 23–24, 188 P.3d 554, 561 (Wyo. 2008) (explaining the arbitrary and capricious standard is a "safety net" that "should not be employed in areas where the more specifically defined standards provide sufficient relief").

contrary to the overwhelming weight of the evidence.  He concedes the Commission rationally rejected Dr. Gillespie's opinion.

[¶10]  The parties do not dispute Mr. McMillan's burden of proof.  Mr. McMillan bore "the burden of proving the elements of [his] claim by a preponderance of the evidence." *Sanchez v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2006 WY 64, ¶ 7, 134 P.3d 1255, 1257 (Wyo. 2006) (citation omitted).  Because his injury occurred over a substantial period of time, Wyo. Stat. Ann. § 27-14-603(a) enhanced his burden.  *Id.* ¶ 10, 134 P.3d at 1258 (citing *Yenne-Tully v. Workers' Safety & Comp. Div., Dept. of Empl.*, 12 P.3d 170, 172 (Wyo. 2000)) (footnote omitted).  Mr. McMillan had "to prove by competent medical authority that his claim arose out of and in the course of his employment [for Unit Drilling Company]" and he had "to prove by a preponderance of evidence that":

> (i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;
>
> (ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;
>
> (iii) The injury can fairly be traced to the employment as a proximate cause;
>
> (iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and
>
> (v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

Wyo. Stat. Ann. § 27-14-603(a) (LexisNexis 2019).[5]  We have recognized that because these statutory requirements "are closely related," the same evidence often pertains to several elements.  *Sanchez*, ¶ 10, 134 P.3d at 1258–59 (quoting *Sinclair Trucking v. Bailey*,

---

[5] The Workers' Compensation Act defines an "injury":

> "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2019).

848 P.2d 1349, 1353 (Wyo. 1993), *overruled on other grounds by Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 24, 49 P.3d 163, 172 (Wyo. 2002)).

[¶11]  The Commission may disregard an expert medical opinion related to causation "if it 'finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete or inaccurate medical history[.]'" *Boyce*, ¶ 26, 402 P.3d at 400–01 (quoting *Price*, ¶ 15, 388 P.3d at 791–92).  "In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it." *Anastos v. Gen. Chem. Soda Ash*, 2005 WY 122, ¶ 20, 120 P.3d 658, 666 (Wyo. 2005) (quoting *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 329–30 (Wyo. 1999)).  Here, the Commission primarily focused on the first and second considerations in reviewing Dr. Carpenter's and Dr. Petrunin's opinions.

### Dr. Carpenter

[¶12]  Dr. Carpenter offered the opinion at issue after counsel represented to him Mr. McMillan "has been diagnosed with multiple myeloma bone cancer, Hashimoto thyroiditis, adrenal issues, endocrine issues[,] [] migraines[,]" and "several neurological diseases that are mimicking multiple sclerosis and polyneuropathy and fibromyalgia."  Dr. Carpenter found it noteworthy Mr. McMillan had been diagnosed with multiple myeloma because benzene exposure increased the risk of developing such cancer.  He opined Mr. McMillan had been exposed to high levels of benzene because studies reflected benzene was elevated at fracking sites in Wyoming.  Though Dr. Carpenter acknowledged his study focused on fracking sites, he asserted benzene exposure would also come from drilling sites.[6]  Mr. McMillan's multiple myeloma was, in Dr. Carpenter's opinion, "consistent with his work over many years" at the drilling site.  Dr. Carpenter opined Mr. McMillan's other symptoms—fatigue, neuropathies, and weakness—were consistent with exposure to volatile organics.  He had no question it was more likely than not Mr. McMillan's employment in the oil and gas industry had been a major risk factor for development of these diseases.

[¶13]  Dr. Carpenter based his opinion on the results of a study initiated by a grass roots organization.  The study stemmed from perceived problems with federal and state monitoring programs, which collected samples over long periods of time and averaged them, potentially missing higher periodic releases of chemicals that had adverse health effects on community members living nearby.  The study therefore focused on capturing single episodic emissions under a limited set of circumstances.  In the study, community members who lived near drilling sites, fracking sites, and compressor stations collected air

---

[6] Drilling and fracking operations each occur at an oil or gas well site.  The well is drilled before it is fracked.  Consequently, well sites at different locations may be engaged in different operations at any given point in time.

samples when they noticed visible emissions, noises, or smells coming from the site, when people felt sick, or when there was a lot of activity around the site. They also placed formaldehyde "badges" on trees and fences in the community. The study included two sites in Wyoming, one in Park County and one in Fremont County, but none in Sublette County where Mr. McMillan worked.

[¶14] The study identified eight compounds that, when measured, exceeded minimal risk levels set by the Agency for Toxic Substances and Disease Registry and the Environmental Protection Agency Integrated Risk Information System, indicating an excess risk of human disease. Samples from Park and Fremont County contained certain compounds above the minimal risk levels. Of particular relevance to Mr. McMillan's case, those compounds included benzene, a carcinogen known to increase the risk of leukemia, multiple myeloma, and other diseases of the blood forming system. They also included formaldehyde, a carcinogen known to cause cancer of the upper respiratory system.

[¶15] The Commission generally agreed with Dr. Carpenter "that extended high exposure to toxic chemicals" increases the risk of various ailments. But it rejected the proposition that the study results applied to Mr. McMillan, noting the following issues with the study and Dr. Carpenter's reliance on it to render his opinion:

- The data collection was not scientifically controlled and Dr. Carpenter was not involved in the collection or control of the data.

- The study focused on "captur[ing] single episodic emissions near fracking sites[,]" but Mr. McMillan testified he worked on a drilling rig.

- The study did not occur in Sublette County where Mr. McMillan worked.

- The study included a "relatively small sample size of seven wells[.]"

- "[N]o evidence was presented that the ground emissions across other counties in Wyoming were identical. At best, Dr. Carpenter assumed the same toxic chemicals would be present if the same sh[ale] formation existed county to county[,]" but there was no geological evidence "that the same sh[ale] formation traversed the counties."

- Mr. McMillan's extent of exposure was unclear as he "was only present on the site for a year and a half maximum based upon [his] work schedule and testimony."

[¶16]   Because Dr. Carpenter had no specific knowledge as to Mr. McMillan's exposure, the Commission found his conclusory opinion overbroad and without foundation.  It noted no compelling evidence linked Mr. McMillan's exposure in Sublette County to his injuries.  It further noted "Dr. Carpenter had no personal knowledge of [Mr. McMillan's] exposure as he never met with [Mr. McMillan], [he] did not specifically correlate [Mr. McMillan's] drill site to specific exposure, nor had a toxicologist report confirmed exposure" (even though Dr. Gillespie recommended Mr. McMillan see a toxic neurologist).   Finally, without proof of the benzene level in Sublette County, the Commission questioned whether Mr. McMillan's "twenty-year history of smoking a pack of cigarettes a day, could have caused his [b]enzene exposure as [b]enzene is a byproduct of cigarette combustion."

[¶17]   In reviewing the Commission's decision, we must bear in mind the Commission's purpose and role in a complex case like this:

> The Wyoming Legislature established the Medical Commission with the implicit recognition that "many contested claims involve complex medical issues."   When presented with expert medical testimony, the Commission, "as the trier of fact, is responsible for determining relevancy, assigning probative value, and ascribing the relevant weight to be given to the testimony."   If the Commission had a reasonable basis for concluding as it did, this Court does not "invade the province of the trier of fact by reaching a different conclusion on appeal."

*Leib v. State, ex rel., Dep't of Workforce Servs., Workers' Comp. Div.*, 2016 WY 53, ¶ 20, 373 P.3d 420, 426 (Wyo. 2016) (quoting *In re Worker's Comp. Claim of McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 38, 311 P.3d 608, 617 (Wyo. 2013)) (internal citations omitted).

[¶18]   The Commission thoroughly explained its reasons for disregarding Dr. Carpenter's opinion, and reasonably found his opinion inadequate.  The Commission's factual concerns about the study and its application to Mr. McMillan are plainly supported by the record.  Those issues undermined the foundation for Dr. Carpenter's opinion.

[¶19]   To the extent the Commission disregarded Dr. Carpenter's opinion because he never met Mr. McMillan, the Commission's decision is not, as Mr. McMillan suggests, at odds with the Commission's decision we affirmed in *Leib*, 373 P.3d 420.  There the claimant and the Division each submitted an opinion from a different doctor who had not physically

examined the claimant. *Id.* ¶ 8, 373 P.3d at 422. The Commission found the Division's expert more credible than the claimant's given his credentials and experience. *Id.* ¶ 9, 373 P.3d at 422–23. That both doctors could render an opinion without physically examining the claimant was not at issue. *Id.* ¶ 22, 373 P.3d at 427. Here, the Commission expressed concern that Dr. Carpenter did not have sufficient knowledge about Mr. McMillan's exposure either through meeting him or examining adequate records about his exposure, thus distinguishing this case from *Leib* where the records were sufficient for the medical expert to form a sound opinion.

[¶20] Dr. Carpenter's lack of knowledge about Mr. McMillan's chemical exposure was particularly significant given the record. Dr. Carpenter testified cancer usually appears "between 5 and 30 years later," but he offered his opinion approximately six years after Mr. McMillan began his employment with Unit Drilling Company and did not acknowledge Mr. McMillan had only worked for Unit Drilling Company for two and a half years, amounting to a total of one and a half years on site. In addition, the Commission found several alternative sources of chemical exposure in Mr. McMillan's background. Specifically, he "had worked at a polymer plant making glue bases and latex" where he wore a hazardous material suit and chemical-resistant respirator. He "experienced one prior workers' compensation injury while working on a grass seed farm when he had an allergic reaction from inhaling grass seed dust while driving an open swather during the harvest." And, as noted above, the record reflected he had a history of smoking.[7] Finally, the Commission questioned whether Mr. McMillan's "chronic use" of the medication Acyclovir explained some of his symptoms.[8] Even setting aside the foundational problems with Dr. Carpenter's opinion, there remained a more substantive question regarding Mr. McMillan's extent of exposure while working for Unit Drilling Company relative to his other sources of chemical exposure and his medication use.

[¶21] Because the Commission had a reasonable basis for concluding as it did with respect to Dr. Carpenter's opinion, we turn to Dr. Petrunin's opinion.

---

[7] Mr. McMillan suggests the Commission erred in this respect because he denied smoking. At Dr. Petrunin's deposition, counsel pointed out that Mr. McMillan's medical records contained conflicting statements about whether he smoked. The "Social History" section stated "he has a previous history of cigarette smoking roughly 20 pack-years, he quit in 2009." The "Health Maintenance" section stated he was "never [a] smoker." Dr. Petrunin testified the "Social History" information, which he personally dictated, was accurate. We will not second guess the Commission's decision to credit Dr. Petrunin's testimony about the medical records over Mr. McMillan's assertion he never smoked. *Boyce*, ¶ 26, 402 P.3d at 400–01.

[8] We disagree with Mr. McMillan's contention that there was no evidence of his "chronic use" of Acyclovir. Mr. McMillan's deposition testimony and his hearing testimony reflect he took Acyclovir "consistently" for more than six years. Semantics aside, the Commission reasonably questioned whether Acyclovir accounted for some of his symptoms.

**Dr. Petrunin**

[¶22]  Dr. Petrunin, the board-certified medical oncologist who diagnosed Mr. McMillan with smoldering multiple myeloma, provided background information about Mr. McMillan's diagnosis, symptoms, and treatment.  He offered the opinion at issue in the course of discussing whether Mr. McMillan's recent complaints of fatigue and pain were connected to the protein spike reflected in his lab work.  Dr. Petrunin testified he would only be able to determine if they were connected after Mr. McMillan began chemotherapy.

[¶23]  Counsel then asked Dr. Petrunin, "If that connection is made can you give an opinion as to what caused the monoclonal condition at that point?"  He responded: "Well, given [Mr. McMillan's] age being 42, 43 years old, very atypical for patients with the diagnosis of multiple myeloma.  And also knowing his exposure to drilling chemicals, I would have to *assume* that that was the chronic antigen stimulation that ultimately *might* have caused his plasma cell dyscrasia."  (Emphasis added.)  Counsel followed up, "Are there any chemicals that you are aware of used in the oil industry that could cause this or is it just kind of more of a broad statement?"  Dr. Petrunin did not "know of anything specifically.  Not any one particular agent comes to mind."  He thought it was "more of a broad exposure."

[¶24]  The Commission afforded Dr. Petrunin's opinion little weight because he based it on an assumption, and he painted his chemical exposure statement with a broad brush.  Dr. Petrunin had no specific factual knowledge about Mr. McMillan's chemical exposure.  For the Commission, his certainty that exposure caused Mr. McMillan's illness could not overcome those underlying problems.

[¶25]  The Commission's rationale for disregarding Dr. Petrunin's opinion is consistent with our precedent and reasonable in light of the record before the Commission.  We have recognized that assumptions about chemical exposure, like Dr. Petrunin's, cannot carry a claimant's burden.  *See Spletzer v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 90, ¶¶ 21–22, 116 P.3d 1103, 1112 (Wyo. 2005) (upholding the Commission's rejection of a medical expert's assumption about claimant's chemical exposure); *see also Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 59, 338 P.3d 921, 934 (Wyo. 2014) (citation omitted) ("[S]peculative medical testimony is insufficient to satisfy a claimant's burden of proof."); *Corman v. State ex rel. Wyo. Workers' Comp. Div.*, 909 P.2d 966, 972 (Wyo. 1996) (citation omitted) ("A claimant cannot prevail if factors necessary to prove his claim are left to conjecture.").  We have also recognized that a medical expert's word choice is critical and "opinions expressed in terms of 'can,' 'could,' or 'possibly' are insufficient to meet a claimant's burden of proof."  *See Baker v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 60,

¶ 10, 395 P.3d 1095, 1099 (Wyo. 2017) (citation omitted). The same is true of an opinion expressed in terms of "might."[9]

### *CONCLUSION*

[¶26]  Having reasonably rejected the opinions of Mr. McMillan's medical experts, the Commission did not err when it concluded Mr. McMillan's remaining evidence could not carry his heightened burden. The Commission's determination that Mr. McMillan failed to meet his burden under Wyo. Stat. Ann. § 27-14-603(a) for an injury occurring over a substantial period of time is not contrary to the overwhelming weight of the evidence.

[¶27]  Affirmed.

---

[9] Mr. McMillan contends Dr. Petrunin's inability to name any specific chemical was immaterial because Dr. Petrunin knew Mr. McMillan worked in the oil and gas industry; it is common knowledge the oil and gas industry works with chemicals; multiple myeloma is not a normal diagnosis for a 42-year-old like Mr. McMillan; the only evidence presented at the hearing was Mr. McMillan was exposed to chemicals in his employment for Unit Drilling Company; and there was no evidence to suggest he was exposed to chemicals outside his employment for that company. This line of argument is unsupported by the record and misses the point. Dr. Petrunin's inability to identify any specific chemicals was only part of the Commission's broader concern about Dr. Petrunin's assumptions.

Mr. McMillan also suggests the Commission's decision will allow "[e]mployers in the oil and gas industry . . . to avoid employee injury liability" because litigants cannot "discover[] what chemicals are used in fracking through any legal process because the formula is considered a proprietary interest." We are not persuaded. As Mr. McMillan himself noted, this case did not turn on Mr. McMillan's or his experts' inability to identify the specific chemicals Unit Drilling Company used.