# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 11

### OCTOBER TERM, A.D. 2021

### January 25, 2022

TERRINA ROSS,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-21-0155

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy, III, Judge*

*Representing Appellant:*
    *Corrie L. Lamb, Barney & Graham, LLC, Gillette, Wyoming.*

*Representing Appellee:*
    *Bridget L. Hill, Attorney General; Mark A. Klaassen, Deputy Attorney General; Peter F. Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.*

**Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.**

**\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.**

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]     Terrina Ross suffered a compensable injury to her left knee in 2007.  She claimed that later injuries to her right knee, ankles, and back were caused by the 2007 injury, and she requested the Department of Workforce Services, Workers' Compensation Division (Division) cover these injuries.  She also applied for permanent total disability (PTD) benefits.  The Division denied both requests.  Ms. Ross requested a hearing before the Medical Commission (Commission), which upheld the denial.   The district court affirmed.  We also affirm.

*ISSUES*

[¶2]     We rephrase the issues as:

> 1.  Was there substantial evidence to support the Commission's finding that Ms. Ross's right knee, ankle, and back injuries were not second compensable injuries?
>
> 2.  Was there substantial evidence to support the Commission's finding that Ms. Ross did not qualify for PTD benefits under the odd lot doctrine because her right knee, ankle, and back injuries were not causally related to her 2007 injury?

*FACTS*

[¶3]     Ms. Ross injured her left knee while she was employed at Campbell County Health in 2007.  The Division covered this injury and the four left knee surgeries that followed.

[¶4]     Although she reported that her right knee was bothering her while recovering from surgery in 2007, she did not mention it again until 2016, when she reported that her right knee swelled, popped, and hurt when she put weight on it.  An MRI showed that she had a tear in the meniscus in her right knee, so she had surgery to repair it.  Around this time, Ms. Ross started to complain about back and ankle pain.

[¶5]     Ms. Ross started seeing Dr. Mark Murphy for pain in both knees and ankles in 2017.  She had a fifth surgery on her left knee.  Soon after this surgery, Ms. Ross was diagnosed with neuropathy in her left leg, which caused a foot drop.  As a result of the foot drop, Ms. Ross tripped on the sidewalk and fractured her left kneecap.

1

[¶6]   One night in 2017, when she was walking in her kitchen, she bent her right knee at an awkward angle and immediately felt pain.  She went to the emergency room, was sent home in a wheelchair, and had surgery on that knee a few months later.  The Division covered the cost of the surgery.[1]  Since then, Ms. Ross has used the wheelchair whenever she leaves the house, and, when she feels tired, inside the house.  Dr. Murphy did not prescribe the wheelchair, nor does he advocate her use of it.  Ms. Ross's condition has gotten progressively worse since 2018, and her left leg muscles are deteriorating because she rarely walks.  She testified that her legs and ankles swell if they are not elevated, that she cannot stand for more than ten minutes or walk more than twenty to thirty feet, and that she must constantly change position when sitting.

[¶7]   Ms. Ross submitted requests to the Division to cover treatment for her right knee, ankles, and back.  She also applied for PTD benefits.  The Division denied her requests and application, and she requested a hearing.  After a hearing, the Commission upheld the Division's denial of Ms. Ross's requests and PTD benefits.  Ms. Ross appealed the Commission's ruling to the district court, which affirmed the ruling.  Ms. Ross now appeals to this Court.

## STANDARD OF REVIEW

[¶8]   This Court reviews the appeal of an administrative action as if it had come directly from the agency, giving no deference to the district court's conclusions.  *Mirich v. State ex rel. Bd. of Trs. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 15, 481 P.3d 627, 632 (Wyo. 2021) (quoting *Sweetwater Cnty. Sch. Dist. No. One v. Goetz*, 2017 WY 91, ¶ 23, 399 P.3d 1231, 1235 (Wyo. 2017)).  Our review is limited by Wyo. Stat. Ann. § 16-3-114(c), which provides:

---

[1] It is unclear why the Division covered this surgery and then denied further treatment on Ms. Ross's right knee.  In its order, the Commission stated:

> In her objection to the Division's denial of coverage for the right knee and ankle, [Ms.] Ross noted the Division paid for such treatment in the past. "The Division's uncontested award of benefits is not a final adjudication that precludes the Division from challenging future benefits." *Hall v. State ex rel. Wyo. Workers' Comp. Div.*, 2001 WY 136, ¶ 14, 37 P.3d 373, 377 (Wyo. 2001). Therefore, while the Division has previously paid for treatment of [Ms.] Ross's right knee, she must still prove in this proceeding that her 2007 workplace injury caused her right knee injury.

We note that the Division is not estopped from denying benefits for an injury that it previously covered. *See, e.g.*, *Porter v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 69, ¶ 16, 396 P.3d 999, 1005 (Wyo. 2017).

(c)     To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:

. . .

(ii)     Hold unlawful and set aside agency action, findings and conclusions found to be:

(A)     Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B)     Contrary to constitutional right, power, privilege or immunity;

(C)     In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D)     Without observance of procedure required by law; or

(E)     Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶9]    "A workers' compensation claimant has the burden of proving all of the essential elements of [her] claim by a preponderance of the evidence." *Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 28, 473 P.3d 299, 309 (Wyo. 2020) (quoting *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 14, 259 P.3d 1161, 1165 (Wyo. 2011)).  When both parties submit evidence, this Court will apply the substantial evidence test to fact findings.  *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 10, 188 P.3d 554, 558 (Wyo. 2008)).  When reviewing findings of facts,

> we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Camacho*, 2019 WY 92, ¶ 23, 448 P.3d at 843 (quoting *Dale*, 2008 WY 84, ¶ 11, 188 P.3d at 558).

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

*Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49, ¶ 16, 250 P.3d 1082, 1086 (Wyo. 2011) (quoting *Dale*, 2008 WY 84, ¶ 22, 188 P.3d at 561). Our review does not turn on whether we agree with the outcome, but rather on whether the agency could reasonably conclude as it did based on all the evidence before it. *McMillan v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2020 WY 68, ¶ 8, 464 P.3d 1215, 1218 (Wyo. 2020) (quoting *Boyce v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 99, ¶ 21, 402 P.3d 393, 399-400 (Wyo. 2017)).

[¶10] This Court applies the arbitrary and capricious standard as a "safety net" to catch other agency action that may have violated the Wyoming Administrative Procedure Act. *Exaro Energy III, LLC v. Wyoming Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 11, 455 P.3d 1243, 1248-49 (Wyo. 2020) (quoting *Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 65, ¶ 19, 135 P.3d 568, 575 (Wyo. 2006)). This standard will apply if the hearing officer "failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Triplett v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021) (quoting *McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 31, 311 P.3d 608, 616 (Wyo. 2013)).

[¶11] Finally, "[w]e review an agency's conclusions of law de novo and affirm only if its conclusions are in accordance with the law." *Triplett*, 2021 WY 118, ¶ 35, 497 P.3d at 911 (citing Wyo. Stat. Ann. § 16-3-114(c)(ii)(A)).

## *DISCUSSION*

### I. *Was there substantial evidence to support the Commission's finding that Ms. Ross's right knee, ankle, and back injuries were not second compensable injuries?*

[¶12] Ms. Ross argues that her right knee, ankle, and back injuries were caused by her left knee injury, and thus should have been covered as second compensable injuries. The Division argues that the Commission correctly denied coverage for those injuries.

[¶13] The second compensable injury rule provides that a subsequent injury may be compensable when "an initial compensable injury ripens into a condition requiring additional medical [treatment]." *Triplett*, 2021 WY 118, ¶ 37, 497 P.3d at 912 (alteration in original) (quoting *In re Kaczmarek*, 2009 WY 110, ¶ 9, 215 P.3d 277, 281 (Wyo. 2009)). "[A] subsequent injury or condition is compensable if it is causally linked to the initial compensable work injury." *Ball v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 24, 239 P.3d 621, 628 (Wyo. 2010) (citing *Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 126, ¶ 18, 164 P.3d 548, 552 (Wyo. 2007)). We have described the required causal connection between the first and second injuries as:

> "direct cause" (*Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 996 P.2d 679, 684 (Wyo. 2000); *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2003 WY 83, ¶ 12, 72 P.3d 799, 803 (Wyo. 2003)); "caused by" (*Casper Oil Co. v. Evenson*, 888 P.2d 221, 226 (Wyo. 1995)); "causally related to" (*Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 46, ¶¶ 26-27, 204 P.3d 967, 973-74 (Wyo. 2009); *Walsh v. Holly Sugar Corp.*, 931 P.2d 241, 243 (Wyo. 1997)); "direct causal connection" (*Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 126, ¶ 17, 164 P.3d 548, 552 (Wyo. 2007)); "direct and natural result" (*Stewart v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 58, ¶ 12, 155 P.3d 198, 203 (Wyo. 2007) (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.10, at 10-2 (2006))); "significant causal connection" and "predominant cause" (*Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp.*

5

*Div.*, 2002 WY 90, ¶ 11, 48 P.3d 1057, 1062 (Wyo. 2002)); "fairly be traced to" and "a contributing cause" (*State ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn*, 951 P.2d 373, 377 (Wyo. 1997)).

*Ball*, 2010 WY 128, ¶ 24, 239 P.3d at 628 (quoting *Kaczmarek*, 2009 WY 110, ¶ 11 n.3, 215 P.3d at 282 n.3). The employee must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first. *Ball*, 2010 WY 128, ¶ 24, 239 P.3d at 628.

[¶14] Ms. Ross underwent two independent medical examinations (IME), and both doctors reported that, in their opinions, Ms. Ross's right knee, ankle, and back pain were not causally related to the 2007 injury. Dr. Murphy, who treated both of her knee injuries, could not opine there was a causal connection between the 2007 injury and Ms. Ross's subsequent injuries. Only Dr. Landi Lowell, Ms. Ross's primary care physician, testified there was a causal connection between the injuries. The Commission rejected Dr. Lowell's opinion and accepted the two IME opinions. Ms. Ross argues the Commission incorrectly discounted Dr. Lowell's opinions.

[¶15] Dr. Lowell described Ms. Ross's injuries as a domino effect, with the instability of the left knee causing the subsequent injuries. She also said the right leg overcompensated for the left leg, and that Ms. Ross's alignment was off. In forming her opinion, she relied on Ms. Ross's report of her medical history and a summary of Ms. Ross's records from one of the IME reports, as she did not have medical records prior to 2018. We have said that the Commission may disregard an expert medical opinion related to causation if it "finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete or inaccurate medical history." *McMillan*, 2020 WY 68, ¶ 11, 464 P.3d at 1219 (quoting *Boyce*, 2017 WY 99, ¶ 26, 402 P.3d at 400-01). The Commission explained that it gave little weight to Dr. Lowell's opinion because she reviewed only medical records from 2018 forward, and because she relied on the IME summary and Ms. Ross's description of her medical history. The record supports the Commission's conclusion that Dr. Lowell's opinion is based upon on incomplete or inaccurate medical history.

[¶16] Dr. Lowell relied on Ms. Ross's self-report that she overuses her right leg to make up for the left leg, which throws off her back. But the record contains no evidence of her overuse claim. Dr. Lowell also attributed Ms. Ross's injuries to an irregular gait caused by the 2007 injury. Although a 2007 IME report noted that "[s]he did limp on the left side during gait," reports from 2009, 2015, and 2016 indicated that her gait was normal. Ms. Ross started to complain of right knee problems near the time the 2016 report indicated her gait was normal, and she started to complain of back pain in 2015. Dr. Lowell did not review the records prior to 2018, which showed no history of an

6

irregular gait prior to 2016.  Given the complexity of Ms. Ross's case, the length of time between the injuries, and Dr. Lowell's limited review of the medical records, the Commission's decision to reject Dr. Lowell's opinion is justified.

[¶17]  Ms. Ross also argues that the Commission's decision was arbitrary and capricious because it did not adequately explain its decision to disregard Dr. Lowell's opinion.  We find no merit in this argument.  As explained above, the Commission disregarded Dr. Lowell's testimony because she had not reviewed all of Ms. Ross's medical records, and because she relied on an inaccurate medical history.

[¶18]  The record contains the opinions of two doctors that there was no link between Ms. Ross's 2007 injury and her right knee, ankle, and back injuries, and it supports the Commission's reliance on those opinions rather than Dr. Lowell's.  There is thus substantial evidence to support the Commission's finding that Ms. Ross did not meet her burden of showing a second compensable injury.

## II.    Was there substantial evidence to support the Commission's finding that Ms. Ross did not qualify for PTD benefits under the odd lot doctrine because her right knee, ankle, and back injuries were not causally related to her 2007 injury?

[¶19]  Ms. Ross argues the Commission incorrectly ruled that she did not qualify for PTD benefits under the odd lot doctrine.  She says all of her injuries, when considered together, made her permanently and totally disabled.  The Division contends there is substantial evidence to support the Commission's denial of Ms. Ross's PTD benefits.

[¶20]  "Permanent total disability" is defined as "the loss of use of the body as a whole or any permanent injury certified under W.S. 27-14-406, which permanently incapacitates the employee from performing work at any gainful occupation for which [s]he is reasonably suited by experience or training."  Wyo. Stat. Ann. § 27-14-102(a)(xvi) (LexisNexis 2021).  The statutory definition of permanent total disability is consistent with the odd lot doctrine, which provides that PTD "may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market." *Schepanovich v. U.S. Steel Corp.*, 669 P.2d 522, 525 (Wyo. 1983) (quoting *Cardin v. Morrison-Knudsen*, 603 P.2d 862, 863-64 (Wyo. 1979)).  The employee does not need to show that she is totally incapable of doing any work to be considered for PTD benefits. *Schepanovich*, 669 P.2d at 525 (citing *E.R. Moore Co. v. Industrial Comm'n*, 376 N.E.2d 206, 208 (Ill. 1978)). Instead, the employee must demonstrate that she is incapacitated "from performing any work at any gainful occupation for which [s]he is reasonably suited by experience and training." *Schepanovich*, 669 P.2d at 528 (quoting *Cardin*, 603 P.2d at 863-64).

7

[¶21] To receive PTD benefits under the odd lot doctrine, the employee must make a prima facie showing that: "(1) '[s]he is no longer capable of working at the job in which [s]he was employed at the time of [her] injury,' and (2) 'the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age' qualify [her] for odd lot treatment." *In re Pickens*, 2006 WY 54, ¶ 14, 134 P.3d 1231, 1236 (Wyo. 2006) (alterations added) (quoting *City of Casper v. Bowdish*, 713 P.2d 763, 765 (Wyo. 1986)). If the employee has established both prongs, then the burden shifts to the Division to show there is a job involving light work of a special nature available to the employee. *Pickens*, 2006 WY 54, ¶ 14, 134 P.3d at 1236 (citing *Bowdish*, 713 P.2d at 766).

[¶22] Under the first odd lot prong, the employee must show that she was disabled by her work-related injury and would be unable to work at her previous job. *Pickens*, 2006 WY 54, ¶ 30, 134 P.3d at 1240 (quoting *Anaya v. Holly Sugar Corp.*, 928 P.2d 473, 475 (Wyo. 1996)). There must be a causal connection between the employee's work-related injury and her inability to work at that job. *Pickens*, 2006 WY 54, ¶ 30, 134 P.3d at 1240. A causal connection exists "when 'there is a nexus between the injury and some condition, activity, environment or requirement of the employment.'" *Rogers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 117, ¶ 15, 284 P.3d 815, 819 (Wyo. 2012) (quoting *Haagensen v. State ex rel. Wyo. Workers' Comp. Div.*, 949 P.2d 865, 867 (Wyo. 1997)). The employee must show she cannot work now because of an injury she sustained at work. *Pickens*, 2006 WY 54, ¶ 30, 134 P.3d at 1240-41.

[¶23] Under the first prong, Ms. Ross had to show she is no longer capable of working at Campbell County Health because of her left knee injury. She argues that she made this showing because her right knee, ankle, and back injuries were caused by her left knee injury and together they make her unemployable. But the Commission found that Ms. Ross's 2007 injury did not cause her subsequent injuries, and we agree there is substantial evidence to support that finding. Ms. Ross therefore did not meet her burden under the first prong of the odd lot doctrine. Ms. Ross may not be able to work, but she failed to show that she cannot work because of her 2007 injury. Having found that she did not meet the first odd lot prong, we do not address the second prong.

[¶24] We will briefly address Ms. Ross's alternative arguments. Ms. Ross argues that even if the 2007 injury did not cause her other injuries, she can still receive PTD benefits because that injury prevented her other injuries from healing. She claims she did not have reliable, stable, or functional use of her left knee and therefore her right knee could never be treated to such a degree that it healed properly enough to function and support her in her daily life and work functions. Even if this is true, Ms. Ross does not cite to any authority that would make her eligible for PTD benefits under this theory. This Court "will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation." *Woods v. State*, 2017

8

WY 111, ¶ 18, 401 P.3d 962, 969 (Wyo. 2017) (quoting *Snyder v. State*, 2015 WY 91, ¶ 15 n.1, 353 P.3d 693, 695 n.1 (Wyo. 2015)).  Ms. Ross also mentions permanent partial disability benefits and the rule out doctrine in her brief but makes no argument about either.  We decline to consider these issues.

## *CONCLUSION*

[¶25]  We find that there is substantial evidence to support the Commission's denial for coverage of Ms. Ross's right knee, ankles, and back, as well as her request for PTD benefits.

[¶26]  Affirmed.